### No. 1191.

### J. G. St. Julien vs. Morgan Louisiana & Texas Railroad Company.

One who permits a railroad company to occupy and use his land and construct its road thereon without remonstrance or complaint, cannot afterwards reclaim it free from the servitude he has permitted to be imposed upon it. His acquiescence in the company's taking possession and constructing its works under circumstances which made imperative his resistance, if he ever intended to set up illegality, will be considered a waiver. But while this presumed waiver is a bar to his action to dispossess the company, he is not deprived of his action for damages for the value of the land, or for injuries done him by the construction or operation of the road.

APPEAL from the Twenty-fifth District Court, Parish of Lafayette: *Clegg, J.*

*M. E. Girard* for Plaintiff and Appellee.

*H. L. Garland* and *Leovy & Kruttschnitt* for Defendant and Appellant.

The opinion of the Court was delivered by

Manning, J. The suit appears to be petitory and for rent of the plaintiff's land occupied and used by the defendant Company as a road bed for its railway. The allegations are that the Company entered upon the land in July, 1879, without the plaintiff's permission or consent, and without purchasing or expropriating it, and constructed its railway, and has since continuously operated it. There is coupled with it a claim for damages for killing stock, which was so vaguely framed, that on exception it was eliminated.

The plaintiff's father in 1852, by act under private signature, gave the right of way over this land to the New Orleans, Opelousas & Great Western Railroad Company which threw up a road bed across it in 1858 or 1859, but laid no rails or cross ties. The war of 1861-5 interrupted the further building of the road, and work was not resumed upon it. That Company became insolvent, and Charles Morgan, in March, 1870, bought at sheriff's sale all its property, franchises, etc., and his deed was recorded in Lafayette Parish where this land is situated. It included the road built across the plaintiff's land. Morgan sold to another company which commenced work at the lower terminus from Berwick's Bay, but he became the owner of the road again, and transferred it to the defendant Company which, in 1879, laid rails and cross ties upon it, and has since operated it.

The plaintiff as a witness says that the Morgan Company did little additional work on the road bed made by the N. O. & Opelousas Company, merely replacing dirt that had been washed away and making a culvert. He was, to use his own language, "almost daily on his place while the works were being done." Construction men came and were there some days, and afterwards construction trains were working there. Quoting him again he "remarked to the men in charge of the construction train, that if they had a right to haul my dirt away they might do it, but if they had not they must stop and they did stop. I told them I had no objection to their taking the dirt thrown by the Opelousas Company but not to widen the ditches. * * When they were laying the rails and cross ties upon the road bed I made no objection. I did not then know the inconvenience of having a railroad through my place. I was at that time a railroad man, in favor of railroads. I did not at that time intend to charge for the right of way, until I found out that they did not put up the cattle guards properly and allowed my stock to get out. I am not positive, I believe I talked to a lawyer about an injunction to be protected in my property."

It is unnecessary for us to say or intimate how or whether he would have been protected had he done more than talk to a lawyer. Certain it is he did not invoke the arm of the law at the time when it could have been of service to him, but on the contrary acquiesced in the defendant's taking possession and using his property, encouraged it to prosecute its work by abstaining from any attempt to prevent it, and made no complaint in a court of law of the injuries inflicted upon him until the defendant had expended large sums of money in completing its line. Having thus permitted the use and occupancy of his land and the construction of a *quasi* public work thereon without resistance or even complaint, he cannot afterwards require its demolition, nor pre-

vent its use, nor treat the Company erecting it as his tenant. He is not debarred from an action for damages by reason of the taking of the land and for its value, but having acquiesced in the entry and encouraged if he did not invite it, he cannot afterwards affect to treat it as tortious. Considerations of public policy, not less than the suggestions of natural justice, require that in such case the owner shall not be permitted to reclaim his property free from the servitude he has permitted to be imposed upon it, but shall be restricted to his right of compensation. Goodin vs. Cincinnati, 18 Ohio, 169.

The question has been treated by the text-writers who exhibit no difference of opinion upon it. Mr Pierce says: " the land owner may even by parol waive the right to prepayment as a condition precedent to an entry for construction, but having waived it he cannot treat the Company's possession as unlawful. * * * A land owner's delay in enforcing his rights does not effect a waiver of his right to prepayment; but a clear acquiescence in the company's taking possession and constructing its works, under circumstances making it his duty to resist the entry, if he intended afterwards to set up that it was illegal, will be treated as a waiver. The waiver, however, while depriving him of the right to dispossess the company, does not deprive him of the right to damages under the special remedy." On Railroads, 169.

If the Company had made an unlawful entry to construct its road, it would be liable in an action of trespass for the injury accruing therefrom, and the satisfaction of this judgment would not have the effect of making the appropriation legal, as would the payment of the award in proceedings for condemnation, but the Company would remain liable to successive actions of trespass for the continuing nuisance, Ibid. 230, or to successive actions for the recovery of rent for continuing use of the land.

And to the same effect is another writer:

" The owner may by his conduct waive his right to prepayment of damages. The courts should not be ingenious in drawing inferences of a waiver, where corporations are to be benefitted, which would be scouted where natural persons are concerned. The fact that the public would be discommoded by the owner's persistence, adds nothing to the presumption of the waiver. The public have no interest in a completed public improvement, which should cause the rights of the owner of land to be disregarded. Slight acts of acquiescence on the part of the owner will estop him from interfering with the running of a railroad. He will not be deprived of his claim for damages, or his right to enforce it in all proper modes, but if he has, in any sense, for the shortest period, clearly given the corporation, either by his express

consent or by his silence, to understand that he did not intend to object to their proceeding with the construction and operation, he cannot, on non-payment of compensation, maintain ejectment. If there was a waiver in fact, either express or implied, by acquiescing in the proceedings of the Company, to the extent of not insisting upon prepayment as a condition precedent, but consenting to let the damages lie and remain a mere debt, with or without a lien upon the road bed, then it is impossible to regard the corporation, in any sense, in the light of trespassers, or liable in ejectment." Mills on Eminent Domain, §140.

While we have said the action appears in some sort to be petitory, and was treated as such by the lower Judge and was thus argued by the defendant's counsel, there is not any allegation or prayer assimilating it to the common law action of ejectment. The complaint is that the Company entered the lands without the owner's consent, without buying or offering to buy, or expropriating them, and that it should not expect nor be permitted to use his property without some compensation, but should be prohibited from trespassing upon it, and he claims therefore one dollar per day for its use. The suit is of a nondescript, or rather hybrid character, but it is substantially a demand for rent, which we do not think he can maintain but must be remitted to his action for compensation.

It is therefore ordered and decreed that the judgment of the lower court is avoided and reversed, with reservation of the plaintiff's right to sue for compensatory damages for the taking possession and conversion of his land to the defendant's use, and that the defendant have and recover its costs in both Courts of the plaintiff herein.