Statement of the Case.
BBEAUN, J.
Plaintiff brought this action to compel the defendant to remove its passenger station, occupied as a depot and as offices, in the town of Gibbsland, and to have its right recognized as owner of a right of way in the town of Gibbsland.
Plaintiff avers its right to property described in its petition.
The contention on the part of plaintiff is that the depot it seeks to have removed is not well situated; that it is not well suited to the purpose for which license was given to locate it within the town limits, and near its (plaintiff’s) track; that it is unsafe, and a nuisance; that it obstructs the view of approaching trains, and there is, in consequence, danger of trains colliding.
The civil engineer of plaintiff’s road testified substantially that the depot obstructed the view so that the engineer of one road could not very well see the trains of the other road approaching; that the building is not in good repair. The local agent, in sub *765 stance, corroborated this statement, and said that there had been accidents.
The vice president of plaintiff’s road testified that the depot is not suitable for the purpose of what is commonly known as a passenger station; that it is not usual for the general officers of railroad companies to occupy such stations as offices, and that it was not contemplated that the general office should be there; and, in the main, this officer corroborates the other witnesses. The defendant’s general manager alone, by his testimony, sought to disprove the statements of these three witnesses.
Plaintiff asks to have itself recognized as owner of the land, and that the defendant be condemned to take away the building. Defendant, averring that it holds right, under a purchase from a corporation named by it as its predecessor, sets up in opposition to plaintiff’s demand that application was made to the plaintiff company, through its general manager, for permission and right of way to construct a depot at the intersection of the two roads at G-ibbsland, which was granted by him; that under his permission its depot was constructed at an expense of about $3,000; and that — to quote from defendant’s answer — it “bought said depot in good faith.”
Defendant further sets forth that it is using this depot since its purchase, that it is necessary to its business, and that the public convenience requires that the station remain where it is.
Defendant depends particularly upon the correspondence which it had with plaintiff. In the first letter the general manager of the defendant road informs the general manager of the plaintiff company, to whom we have before referred, that he incloses to him a sketch showing the place at which his road crosses, and at which he proposed to locate a depot for both roads — plaintiff’s and defendant’s — at the intersection of the two roads.
He also informed this general manager that the crossing had been constructed, and the grades of its road extended south of the plaintiff’s road, and that the lumber was on the ground for the depot. He requested to be informed by this general manager whether his (plaintiff’s) trains would stop at the depot to receive and deliver passengers. He also said that defendant road met with difficulty. It had been compelled to discharge passengers, with their baggage, in a muddy field, at some distance, where there was no shelter.- This, it seems, was creating complaints, which defendant’s general manager desired to remedy.
To copy an extract from his letter: “Each train can use its own road at the same time, and both trains can be at the depot at the same time without being in each other’s way.”
To this the general manager of plaintiff’s road answered that there could be no objection to constructing the depot as proposed; that he was informed that the location is all such a location should be. The general manager of the defendant road acknowledged receipt, and informed the general manager of the plaintiff road that he had commenced work upon the building, and that he intended to build a depot that would be well adapted to the business of both companies, and that he understood that, at all events, plaintiff’s trains would receive and discharge passengers and baggage at this depot.
Originally, the dispute between plaintiff and defendant involved, in addition, right of way of a switch or switches of defendant road. That part of the dispute between these parties has been settled and compromised. The depot question, however, was left to the decision of the courts.
Opinion.
There is no question of any right acquired by defendant from the corporation by which it was preceded as owner. Defendant pleaded a right which it had acquired from its vendor. Its learned counsel meets the issue in his brief without reference to any acquired rigilt; for the good reason, doubtless, that defendant had not acquired any right from its vendor which can be of any avail in this suit. If the permission regarding this depot was obtained by the vendor, it passed to the vendee, the defendant in the present suit, with all the advantages or disadvantages it may have.
This brings us to the question whether the owner can force removal after the defendant had erected a depot, and whether defendant is protected by the prescription pleaded.
The right is necessarily dependent upon the facts of the case.
*767 I-Iere no attempt was made by defendant to expropriate the land, or to enter upon particular land with the view of acquiring possession and ownership for its railroad.
In order to enable railroads, in the interest of the public, to extend their tracks to the different parts of the country, they have been given the right of expropriating lands upon which to construct their depots, as well as for their right of way.
This is said here only to add that depots and railroads are on the same footing in this respect.
Further, in the same line of right of railroad companies, acquiescence in a company’s taking possession and constructing a depot, as with a railroad track, will be treated as a waiver depriving the owner of the right to dispossess the company, although it is not a waiver of payment.
This was the rule laid down in St. Julien v. Railroad Company, 35 La. Ann. 926, which has since always been followed.
But there is considerable difference here. The two powerful corporations, through their respective officers, came together and agreed upon a modus vivendi at this particular depot, as would any ordinary persons regarding their rights. It was constructed at the expanse of defendant for joint use. These strong companies, in view of this fact, must be judged as in the case of the average person who obtains the right of occupying the land of another.. If A. gives the right to B. to build upon his land, and the building no longer serves the purpose for which it was constructed, B. may be condemned to move it away. He is not presumed to have given the land, or to have given a servitude upon the land, upon which the building is constructed. The right of property is constitutional in the sense that it is inviolable. It cannot be taken, save for public use, under legal form. An owner also may, by the effect of his waiver, as before held, commute his title to land for its value.
We have seen that the land has not been expropriated; that the owner has not waived its title; but that these parties entered into an agreement, the effect of which we would not be justified in changing. The land was not acquired by any of the modes required. It is true that it is occupied bjr defendant, and that occupation is one of the modes of acquiring. But defendant does not come within the requirements in order to acquire by occupation. He holds under a license, which precludes the acquisition or right claimed by him.
The right, whatever it may be under the license, is not a servitude, for the form required has not been followed for the acquisition of a servitude. The right is immovable, and subject to the laws regarding immovable property and its transfer.
The general manager of the plaintiff company had no right to grant a servitude had he undertaken to grant such a right. Rev. Civ. Code, arts. 471, 729, 734, 2440.
The license was granted for a particular purpose, but it happens that the building is not equal to the increasing business. It is not used as plaintiff contemplated it would be used. It is not in good repair. It is in the way, as it obscures needed range of view at this stop. The licensor, we think, • can insist upon its removal. The agreement was in some respect commutative. As the building does not come up to the condition expected under the terms of the license, the defendant will have to remove it. Even if defendant had acquired a servitude, the owner of the land upon which it has been acquired may change it from one place to another. Rev. Civ. Code, art. 703 et seq.
We think, under the circumstances, it should have ample time, and to that end ample time will be provided in our decree. And, furthermore, in our view, the right should be reserved to defendant of expropriating land of plaintiff for its depot under the terms of the law, and in accordance with rights of all parties.
It is therefore ordered, adjudged, and decreed that the judgment appealed from is annulled, avoided, and reversed.
It is further ordered, adjudged, and decreed that plaintiff is the owner of the property on which defendant’s depot was constructed.
It is further ordered, adjudged, and decreed that defendant is condemned to remove the passenger station constructed and occupied by it on plaintiff’s property in Gibbs-land within seven months from the date of this decree, and that, in default of this removal within that time, the same be demolished by lawful authority. Defendant’s rights to expropriate needful land for its *769 depot, and all legal remedies it may have in that connection, are reserved.
Defendant is condemned to pay costs of hoth courts.