359 So.2d 715 (1978)
TRUSTEE CORPORATION and Illinois Central Gulf Railroad
v.
William P. ALLEN, Sr. and Keller Construction Corp.
No. 8886.
Court of Appeal of Louisiana, Fourth Circuit.
May 10, 1978.
*716 Lemle, Kelleher, Kohlmeyer & Matthews, Julian H. Good, Alan H. Goodman and Ira J. Middleberg, New Orleans, for plaintiffs-appellants.
Clayton J. Borne, III, Metairie, for defendant-appellee.
Before LEMMON, SCHOTT and BEER, JJ.
BEER, Judge.
Trustee Corporation and Illinois Central Gulf Railroad (hereafter, "I. C.") seek to enjoin William P. Allen, Sr. from preventing their use of spur tracks which cross Allen's property.
In 1948, Keller Construction Corporation, then owner of all the property here involved, permitted I. C. to construct a spur track. Though appellants contend this agreement was recorded, we find no indication of that in the record before us.
In 1953, Keller sold approximately one-half of its property to Trustee Corporation. The spur track ran across the part retained by Keller and onto the part sold to Trustee. At the time of the act of sale (Keller to Trustee), an agreement providing for use of the spur track between Trustee, Keller and I. C. was confected. The last paragraph of that unrecorded agreement provides:
"10. The Railroad Company and Keller Construction Corporation, party hereto, mutually agree that that certain agreement dated February 4, 1948, between them, covering the same subject matter as this agreement, shall be cancelled as of the date hereof."
In August, 1972, the property still owned by Keller was resubdivided, and a survey of same (approved by the City Planning Commission) was recorded in the conveyance and mortgage records of Orleans Parish. That recorded survey depicts a spur track running across Keller's property and onto Trustee's property.
In September, 1972, Keller sold a part of the recently subdivided property (over which the spur track ran) to Allen. The description of the property sold to Allen is detailed in the act of sale and makes reference to the recorded survey (which depicts the spur track).
This litigation was precipitated when Glazer Steel Corporation (whole owner of Trustee) requested that I. C. deliver a railroad car to the spur track adjacent to their warehouse which is located on the Trustee property. Permission for the car to cross from the mainline to the warehouse siding by going over the tracks located on the Allen property was denied by Allen.
Thereupon, Trustee and I. C. sued to enforce the alleged existent servitude by Temporary Restraining Order and also prayed for a court-ordered survey to fix the exact location of the servitude. Alternatively, they sought damages in the amount of $75,000.
A TRO issued, restraining Allen from preventing the use of the spur track, but a preliminary injunction was, thereafter, denied. From the judgment denying the preliminary injunction, appellants devolutively appeal, urging three alternative grounds for the alleged servitude upon which the preliminary injunction depended:
1. Conventional acquisition of the right-of-way of which defendant Allen was allegedly put on notice by reference in the deed by which he acquired to the 1972 plot plan, recorded in the public records, which depicts a spur track, so labeled, crossing the subject property.
2. Appropriation by unopposed use and occupancy under the St. Julien doctrine.
3. Acquisition under La.Acts 1976, No. 504, now codified as La.R.S. 19:14 (Supp.1977).
*717 The 1972 survey, which was recorded at the time of resubdivision of the property, depicts two lines, labeled "spur track," crossing Lot N. Allen acquired his property (described as Lot N) subject to all servitudes with which it might be encumbered, and the act of sale makes specific reference to the recorded survey map which depicts the spur tracks. This recordation plus the obvious physical factors here existent[1] constitute a strong basis for determining that there was a servitude in existence. Note: Werk v. Leland University, 155 La. 971, 99 So. 716 (1924). Accord, O'Reilly v. Poche, 162 So.2d 787 (La.App. 4th Cir. 1964).
We are of the view that Allen purchased Lot N with sufficient public records notice and, in fact, actual physical notice, of the existence of the spur track servitude. But even if we did not conclude that a servitude existed on this theory, appellants' alternate theories have merit:
The St. Julien doctrine, stemming from St. Julien v. Morgan's La. & R. R. R. & S. Co., 35 La.Ann. 924 (1883), permitted the appropriation of a right of way by a public or quasi-public corporation where the landowner has consented or acquiesced in the construction. It appears to have operated independent of the public records doctrine. See: Webster Sand, Gravel & Constr. Co. v. Vicksburg So. & Pac. Ry., 129 La. 1096, 57 So. 529 (1912). See also, Comment, 51 Tul. L.Rev. 375, 378 (1977). To make the doctrine operative, the property had to be used for some public purpose, not exclusively in the interest of a private enterprise. But, where public benefit by the transportation of goods was the end result, spur tracks serving private enterprises were considered a public purpose. See: Gumbel v. N. O. Terminal Co., 186 La. 882, 173 So. 518 (1937); Webster Sand, Gravel & Construction Co. v. Vicksburg S. & D. Ry., 129 La. 1096, 57 So. 529 (1912); Tremont & Gulf Ry. Co. v. Louisiana & A. Ry. Co., 128 La. 299, 54 So. 826 (1911); Louisiana & A. Ry. v. Louisiana Ry. & Navigation Co., 125 La. 756, 51 So. 712 (1910).
However, Lake, Inc. v. Louisiana Power & Light Company, 330 So.2d 914 (La.1976), prospectively overruled St. Julien and makes its applicability questionable here. Nevertheless, State Dept. of Highways v. Thurston, 338 So.2d 154 (La.App. 2nd Cir. 1976), decided after Lake but involving facts which occurred before Lake (similar to the situation here existent) noted:
"The Supreme Court gave prospective effect of its ruling in Lake, and thus the doctrine is applicable to the instant case. . ."
Since La.R.S. 19:14 was obviously passed in reaction to the Lake decision, we believe that it gives legislative approval (with slight variations) to the prospectively overruled, jurisprudentially created St. Julien doctrine. See, e. g. A. N. Yiannopoulos, "The Work of the Louisiana Appellate Courts for the 1975-1976 Term: Property," 37 La.L.Rev. 317, 326 (1977); Comment, 51 Tul.L.Rev. 375 (1977); Note, 22 Loy.L.Rev. 1066 (1976).
Paragraph 2 of the La.R.S. 19:14 provides:
"In the case where any corporation referred to in Section 2 of this Title has actually, in good faith believing it had the authority to do so, taken possession of privately owned immovable property of another and constructed facilities upon, under or over such property with the consent or acquiescence of the owner of the property, it will be presumed that the owner of the property has waived his right to receive just compensation prior to the taking, and he shall be entitled only to bring an action for judicial determination of whether the taking was for a public and necessary purpose and for just compensation to be determined in accordance with Section 9 hereof, as of the time of the taking of the property, or right or interest therein, and such action shall *718 proceed as nearly as may be as if the corporation had filed a petition for expropriation as provided for in Section 2.1 of this Title."
Though appellee argues that the statute should be invalidated for the same reasons that the Supreme Court invalidated the St. Julien doctrine in Lake, we question the merit of this contention. The court in Lake did not overrule the St. Julien doctrine on constitutional grounds, but on the basis of its inconsistency with codal provisions. La. Acts 1976, No. 504, as a legislative enactment, now has equal status with the codal provisions.
If the St. Julien doctrine is applicable here (since the taking by ICRR occurred before the Lake decision), then the preliminary injunction should have been granted. If not, then La.R.S. 19:14 should be applied and would dictate the same result.
Accordingly, we are of the view that appellants have established their right to a preliminary injunction which would prevent Allen or his agents, successors, etc. from inhibiting their use of the spur track which is the subject matter of this litigation, and, in that regard, the judgment of the Civil District Court for the Parish of Orleans, denying the preliminary injunction, must be overruled. That is the only issue before us in this appeal.
Consequently, the judgment of the Civil District Court for the Parish of Orleans, denying the preliminary injunction, is reversed, and this matter is remanded to that court for further proceedings consistent with this opinion. Costs of this appeal are taxed to the appellee.
REVERSED AND REMANDED.
LEMMON, J., concurs and assigns reasons.
SCHOTT, J., concurs in the result.
LEMMON, Judge, concurring and assigning reasons.
An act affecting immovable property shall not have effect against third parties until the act is recorded. C.C. art. 2264. Thus, even if the third party has actual knowledge of the existence of an unrecorded servitude, the servitude has no effect upon that party.
The record contains no evidence of recordation of the 1948 spur track agreement between Keller and the railroad. Since there is no evidence that the act which created the servitude has ever been recorded, defendant cannot be affected by the unrecorded servitude, irrespective of his knowledge of the actual existence of the spur track.
The more difficult question is whether the document executed by Keller and plaintiff, and recorded and indexed in both names, created a servitude by destination under C.C. art. 767.[1] However, we need not decide that question.
The good faith construction of the spur track in 1948 with the knowledge and consent of the owner established a servitude for the spur track under the St. Julien doctrine, and the decision in the Lake case has no application to this servitude established before the Lake decision.
SCHOTT, Judge, concurring in the result.
Being of the opinion that the recordation of the 1972 survey in connection with the re-subdivision of the property, together with the specific reference to the recorded survey made in the act of sale by Keller to appellee constituted notice under the public records doctrine of the existence of the servitude over the property purchased by appellee, I concur in the reversal of the judgment of the trial court.
NOTES
[1] The pictures of the spur track across Lot N (apparently placed into the record at the time of hearing of the TRO since they are attached to one of the affidavits submitted at that time) make it difficult to conclude that any purchaser would be ignorant of their presence on the land.
[1] The document stated that the survey plat was being registered and "made part of title chain."