McClendon, Judge.
Plaintiffs sued the City of Bossier City seeking to have declared null two drainage servitudes previously granted by plaintiff Eugene B. Holt and for removal of the physical edifices (24" concrete pipe buried five or six feet deep) placed on the property by defendant. Alternatively, plaintiffs sought $5,000 in damages.
*497 From a trial court judgment rejecting their demands plaintiffs appealed. We affirm.
Plaintiffs, as the only children of Annie White Holt, inherited from her Lot No. 104 and the West Half of Lot No. 103 of Riverside Subdivision in Bossier City, Louisiana. The mother’s succession was never formerly opened, so that plaintiffs have not been judicially recognized or placed in possession of this property, but their status as heirs and owners of an undivided one-half interest each in this property was not questioned.
The two instruments complained of herein are actually plats (Exhibits P-1 and P-2) showing that portion of the Riverside Subdivision containing the two lots involved, as well as their location in relation to the adjacent street, the location of the 10' easement, and the signature of Eugene B. Holt as “Owner” under the following wording: “I hereby dedicate to Public use the 10' drainage easement as shown hereon.”
Both plats are dated under the legend describing them as a “Drainage Easement Dedication Plat.” P-1 bears date of December 12, 1973, and P-2 the date of April 18, 1974. The filing dates are not clear on the exhibit copies, but P-1 was recorded February 27, 1974 and P-2 on May 3, 1974 in the Conveyance Records of Bossier Parish. A change in the location of the easement is the reason for the second plat.
From the record we find that the drainage problem arose from the fact that this particular area of Bossier City is generally flat with that part of Riverside Subdivision lying south or southwest of Riverside Drive sloping slightly towards Red River. Riverside Drive itself is described as hard surfaced but not curbed and guttered. Instead, there are ditches on either side of the raised center portion, but these were not adequate to prevent water from standing on the lots to the north of Riverside Drive, including the Cane property across from Holt. In addition to the 24" drain placed down the easement through plaintiffs’ property, other smaller drains and catch basins were installed on the Cane property, in the north ditch of Riverside Drive, and under that street to tie into the concrete catch basin at the north end of the drainage pipe in question. All of these apparently worked together and did much to alleviate the problem.
Appellant Eugene B. Holt admitted signing the first plat, but could not remember signing the second. He contended that he never intended to dedicate this easement to the public, but merely thought he was helping his neighbor, Mr. Cane, now deceased, who was having a serious problem with water standing on his property across Riverside Drive. He testified that Cane asked him to sign the first plat one morning as he was leaving for work and that he did not read it because he did not have his glasses on at the time. Appellant Holt further denied any contact with any representative of the City or even observing any Bossier City equipment being used to excavate the ditch or to lay the 300+ feet of 24" reinforced concrete drainage pipe from the concrete catch basin in the south ditch of Riverside Drive back across Lot 103 toward Red River. He claimed he was assured by Cane that this was just between the two of them.
We agree with the trial court’s finding that appellant Eugene B. Holt in fact granted the servitude to the public. Admittedly it was an unusual manner in which the dedication was presented to Holt for signature, i. e., handed to him by his neighbor rather than by a representative of the City; however, a person is presumed to have read and understood what he signs in the absence of fraud.
Bud Finance Co., Inc. v. Gilardi, 330 So.2d 622 (La.App. 4th Cir. 1976); South Central Bell Tel. Co. v. McKay, 285 So.2d 563 (La.App. 1st Cir. 1973); Hicks v. Ocean Drilling & Exploration Co., 512 F.2d 817, cert. denied H. B. Buster Hughes, Inc. v. Ocean Drilling & Exploration Co., 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 639 (1976).
In addition, we find that Mr. Holt testified (Tr. 47) that he called upon the City to *498 pay for damages to his truck caused by falling into a hole in the right of way on his property about 100 feet back from the street and was paid by Bossier City. He did this despite his contention that he was not aware that this was a public project, but thought it was privately done by his friend Cane across the street.
Upon concluding that appellant Holt did grant the servitude, he is precluded from attempting to set it aside for failure of his sister co-owner, Mrs. Hilburn, to join in the dedication.
Louisiana Civil Code Article 715 (former Art. 739) provides in part:
A coowner who has consented to the establishment of a predial servitude on the entire estate owned in indivisión may not prevent its exercise on the ground that the consent of his coowner has not been obtained.
Appellant Holt, therefore, actually has no cause or right of action in this proceeding.
The trial court found that Mrs. Hil-burn, the other co-owner, did not sign either of the plats, but knew of the construction and made no protest and had, therefore, acquiesced under the holding in the case of Superior Oil Producing Co. v. Leckelt, 189 La. 972, 181 So. 462 (1938).
We have considerable reservations as to the applicability of this case dealing with mineral servitudes to the present situation, but do find that there was “acquiescence” on Mrs. Hilburn’s part under the St. Julien doctrine as first established by the Louisiana Supreme Court in 1883 in St. Julien v. Morgan La. & Texas Railroad Co., 35 La.Ann. 924.
The St. Julien doctrine has been recently held inapplicable to a “discontinuous apparent” servitude such as an electric power transmission line (held to be “discontinuous” because the act of man was required for its exercise) in Lake, Inc. v. Louisiana Power & Light Co., 330 So.2d 914 (La.1976). However, the Louisiana Supreme Court made the following statement in overruling St. Julien v. Morgan La. & Tex. RR Co., supra and other cases depending upon the doctrine:
However, the St. Julien doctrine has become a rule of property, probably relied on by utilities since its establishment. Because the doctrine has been so entrenched and repeatedly affirmed by this court, the ruling in this case, as to property not involved in this suit, will be prospective only, affecting conduct occurring after the finality of this judgment.
We find that Mrs. Hilburn’s knowledge of the existence of the 3008 + feet of 24" drainage pipe in the ground without protest from 1974 to the filing of the present suit in January of 1978 falls within the quoted exception in Lake, Inc., supra. Mrs. Hil-burn testified she thought the Canes had put the drain in and had no objection to it until erosion took place along and at the southern end of the pipe. She admitted she did not call upon the Canes to correct the problem.
Although the St. Julien doctrine seems to have been applied to more cases involving railroad rights of way, it was not limited to such. It was based upon “occupancy and use of the property by a public utility, with the knowledge, consent or acquiescence of the landowner” and not upon the lapse of any specific prescriptive period. The cases were founded upon the “combined presumed consent of the owner of the land and the public interest.” (Gumbel v. New Orleans Term. Co., 186 La. 882, 173 So. 518).
The owner of the land is presumed to have yielded, without an expropriation suit having been brought against him, what an expropriation suit would have compelled him to yield.” Gumbel, supra.
In the present case the City of Bossier City had the right of expropriation for this drainage servitude. Louisiana Revised Statutes 33:401A(20) and 33:4621.
Even though the landowner is not permitted to reclaim his land under St. Ju-lien, he is permitted to claim compensation for the taking.
Therefore, we affirm the judgment of the trial court at appellants’ cost, reserving to Mrs. Hilburn her right to seek compensa *499 tion for the taking and to both appellants any other rights to damages they may have arising out of the city’s use of the servitude, including erosion along or at the end of the drainage pipe laid in the servitude. The damages alleged alternatively in the original petition were shown by the record to have been in the nature of costs to remove the pipe and restore the plaintiffs’ land to its former condition rather than to compensate plaintiffs for any damages they might be due on account of erosion.