430 So.2d 256 (1983)
SOUTH CENTRAL BELL TELEPHONE COMPANY
v.
John and Evelyn EISMAN.
No. 82-C-2.
Court of Appeal of Louisiana, Fifth Circuit.
April 11, 1983.
Rehearing Denied May 18, 1983.
*257 R. Patrick Vance, Jones, Walker, Waechter, Poitevant, Carrere & Denegre, New Orleans, for plaintiff-appellant.
Leon C. Vial, III, Hahnville, for defendants-appellees.
Before BOUTALL, GAUDIN and GRISBAUM, JJ.
GAUDIN, Judge.
This is an appeal by South Central Bell Telephone Company from a judgment ordering it to pay $28,566.00 in trespass damages to Mr. and Mrs. John Eisman because the telephone company installed an underground conduit and manhole on the Eismans' property without obtaining full permission.
South Central Bell did negotiate with Mr. Eisman and he executed a servitude contract authorizing the work, but appellant did not secure Mrs. Eisman's signature.
The trial judge held that the agreement was relatively null and that it became absolutely null when Mrs. Eisman did not ratify it. We affirm this legal determination, and we affirm the awards of $1,500.00 for the right-of-way servitude and $2,066.00 for resodding of the lawn. However, we reduce the award for general damages from $25,000.00 to $5,000.00, and we award this sum to Mrs. Eisman and not to the Eismans jointly.

BACKGROUND
In March and April, 1980, an agent for South Central Bell, Larry Brasseaux, had contacts with Mr. Eisman and obtained his signature on a servitude agreement for a consideration of $214.00. The check was delivered to Mr. Eisman on April 23, 1980, and work on the underground conduit proceeded to its conclusion.
In August, 1980, South Central Bell alleges, Mr. and Mrs. Eisman began to park their car in such a manner as to interfere with the company's access to the underground conduit's manhole. On November 10, 1980, South Central Bell filed a petition in the 29th Judicial District Court seeking declaratory and injunctive relief.
Mr. and Mrs. Eisman answered and reconvened, asserting that the servitude was invalid and that South Central Bell had trespassed.
Following trial, the district judge denied South Central Bell's request for declaratory and injunctive relief, awarded damages to Mr. and Mrs. Eisman and ordered the telephone company to pay all costs.
The judgment also contained this clause:
"Alternatively, should the plaintiff decide to remove the conduit and manhole from the defendant's property, they must restore the property to its previous condition and reimburse the defendants for all court costs and attorney's fees in connection with this proceeding."

SPECIFICATION OF ERRORS
From this adverse judgment, South Central Bell contends on appeal that the trial judge erred:
(1) In not concluding that Mrs. Eisman's actions constituted ratification of the servitude agreement executed by her husband;
(2) In not finding that South Central Bell had a valid servitude;
(3) In refusing to apply LSA-R.S. 19:14;
(4) In deciding that South Central Bell had trespassed and that it was liable for trespass damages; and
(5) In awarding excessive damages.

*258 DID MRS. EISMAN CONSENT?
Since January 1, 1980, when Articles 2337, 2347 and 2353 became effective, the assent of both husband and wife is required on certain agreements. These articles read:
Article 2337
"A spouse may not alienate, encumber or lease to a third person his undivided interest in the community or in particular things of the community prior to the termination of the regime."
Article 2347
"The concurrence of both spouses is required for the alienation, encumbrance, or lease of community immovables, furniture or furnishings while located in the family home, all or substantially all of the assets of a community enterprise and movables issued or registered as provided by law in the names of the spouses jointly."
Article 2353
"When the concurrence of the spouses is required by law, the alienation, encumbrance or lease of community property by a spouse is relatively null unless the other spouse has renounced the right to concur..."
These provisions are relatively new, and there are no reported cases on the relationship between them and servitude contracts. However, the unmistakable thrust of these articles, insofar as servitude agreements are concerned, is that contracts signed by only one spouse are relatively null and that the agreements become absolutely void and of no effect unless confirmed by the other spouse.
A relatively null act can be validated by subsequent ratification, and it is South Central Bell's contention that Mrs. Eisman did acknowledge and recognize the contract signed by her husband.
Appellant's agent (Brasseaux) testified that he was unaware that the law had been changed and that the servitude contract needed the signatures of both Mr. and Mrs. Eisman. Appellees suggest that this admission is odd in that Mr. Brasseaux earns his livelihood as a right-of-way agent and the changes in Louisiana community property laws which became effective on January 1, 1980, were substantial and were well publicized while under legislative consideration and thereafter.
Regardless, the record does contain testimony by telephone company representatives indicating that Mrs. Eisman condoned the conduit installation and that she sanctioned the servitude agreement signed by her husband. The trial judge, however, obviously placed more credence in Mrs. Eisman's contrary declarations.
In his "Reasons for Judgment," the judge said:
"The fact remains that Mrs. Eisman never signed the agreement and according to her testimony, continued to object to the location of the manhole on her property; although, testimony seems to indicate that Mrs. Eisman discussed with construction officials various operations on her property. She testified she objected throughout and even contacted the telephone company officials in Birmingham, Alabama, concerning the problems and trespass on her property."
The trial judge found that South Central Bell "... proceeded without a valid servitude from Mrs. Eisman..." and "... acted with impropriety..." Further, the trial judge said that South Central Bell "... could not enter on defendant's property in good faith ..." and that it "... violated the property rights of ... Mrs. Eisman."
There is a reasonable basis in the record for these findings, and we cannot say that they are manifestly erroneous. See Canter v. Koehring Co., 283 So.2d 716 (La.1973), and Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
South Central Bell did produce more witnesses than the Eismans, but, as Judge L. Julian Samuel wrote in U.S. Fidelity and Guaranty Co. v. Fiffie, 211 So.2d 690 (La. App. 4th Cir.1968):

*259 "Witnesses are weighed and not counted. A fundamental function of the trier of fact, be it judge or jury, is to determine the facts and this is not done by counting noses."
We cannot, therefore, find that Mrs. Eisman either gave her consent or that her actions comprised a ratification. The trial judge did not make either determination, nor can we.

THE ST. JULIEN DOCTRINE
Appellant relies on the so-called St. Julien doctrine, which emanates from St. Julien v. Morgan Louisiana & Texas Railroad Company, 35 La.Ann. 924, an 1883 decision of the Supreme Court of Louisiana saying that a property-owner who allows his land to be occupied and used without remonstrance or complaint cannot afterwards reclaim it free of the permitted servitude.
In St. Julien, the landowner allowed construction of railroad tracks across his property but then objected to the way the cattle guards were installed.
The court said:
"It is unnecessary for us to say or intimate how or whether he would have been protected had he done more than talk to a lawyer. Certain it is he did not invoke the arm of the law at the time when it could have been of service to him, but on the contrary acquiesced in the defendant's taking possession and using his property, encouraged it to prosecute its work by abstaining from any attempt to prevent it, and made no complaint in a court of law of the injuries inflicted upon him until the defendant had expended large sums of money on completing its line. Having thus permitted the use and occupancy of his land and the construction of a quasi public work thereon without resistance or even complaint, he cannot afterwards require its demolition nor prevent its use..."
The St. Julien doctrine is codified in LSA-R.S. 19:14, as follows:
"In the case where any corporation referred to in Section 2 of this Title has actually, in good faith believing it had the authority to do so, taken possession of privately owned immovable property of another and constructed facilities upon, under or over such property with the consent or acquiescence of the owner of the property, it will be presumed that the owner of the property has waived his right to receive just compensation prior to the taking, and he shall be entitled only to bring an action for judicial determination of whether the taking was for a public and necessary purpose and for just compensation to be determined in accordance with Section 9 hereof, as of the time of the taking of the property, or right or interest therein, and such action shall proceed as nearly as may be as if the corporation had filed a petition for expropriation as provided for in Section 2.1 of this Title."
The applicability of the St. Julien doctrine and R.S. 19:14 depends on the good faith of the corporation and the landowner's concurrence with whatever work was done.
Although Mr. Eisman authorized the telephone company's activities, Mrs. Eisman neither signed the servitude contract nor later, by her actions, confirmed the project; hence, we cannot relate either the St. Julien doctrine or R.S. 19:14 to the instant situation.
Also, the trial judge did not believe that the telephone company acted in good faith, as he so stated in his assigned "Reasons for Judgment."

DAMAGES
As there was no binding servitude contract, trespass damages are due.
The award of $28,566.00 to Mr. and Mrs. Eisman jointly was itemized as follows:
(1) $25,000.00 for improper entry and trespass;
(2) 1,500.00 for right-of-way servitude; and
(3) 2,066.00 for resodding of lawn.
We find no fault with the award to the Eismans of items (2) and (3). With regard to the first item, however, it is difficult to *260 associate general damages with Mr. Eisman as he had authorized the construction and anticipated it.
Mrs. Eisman, however, is entitled to an award for mental pain and anguish,[1] and we set this amount at $5,000.00. The award of $25,000.00 in general damages, which included mental pain and anguish, was beyond the range of the district court's discretion, considering the evidence and testimony adduced at the trial.

CONCLUSION
The award of $25,000.00 in general trespass damages is reduced to $5,000.00, with this amount awarded to Mrs. Eisman personally. In all other respects, the judgment of the district court is affirmed.
AFFIRMED IN PART, AMENDED IN PART AND RENDERED.
NOTES
[1] See Boswell v. Roy O. Martin Lumber Co., Inc., 363 So.2d 506 (La.1978).