LOBRANO, Judge.
This expropriation suit was filed by the Orleans Levee Board against Newport Enterprises and Newport Limited (Newport) seeking a certain 25.77 acre tract for flood wall, floodgates and other flood control structures. The Levee Board deposited the sum of $146,564.00 in the registry of the Court pursuant to La.R.S. 38:351, et seq. and immediately acquired the rights to the 25 acre tract. Newport reconvened seeking additional compensation. Nine months later, the Levee Board filed a motion to *408 dismiss its own proceeding asserting that Newport did not acquire its ancestor in title’s right to claim compensation; and that, even if it did, those rights have prescribed. When presented with this unusual procedural status, the trial court characterized the motion as exceptions of no right of action and prescription. After a lengthy hearing before a court appointed commissioner, the trial court relying on St. Julien v. Morgan, Louisiana and Texas Railroad Co., 35 La.Ann. 924 (1883) and La.R.S. 19:2.1 upheld both “exceptions” and dismissed this action. Newport appeals.
FACTS:
On May 21, 1971, Seaway Land Co. Inc., Newport’s ancestor in title, granted the Levee Board a “Right of Entry” to enter upon approximately 25 acres of its land for the purpose of constructing a closure dam and flood gates in the area of Bayou Bien-venue and the Mississippi River Gulf Outlet.
Acting on the “Right of Entry” the U.S. Army Corps of Engineers completed the project in September of 1974. In addition to the authority granted to enter Safeway’s property, the agreement also provided:
“It is agreed that negotiations will be entered into promptly for the acquisition by the Board of Levee Commissioners of the Orleans Levee District of fee simple for the control structure site, permanent easements for the channel and a temporary area for placement of spoils, in the lands upon which this right of entry is granted under mutually satisfactory terms, or, if mutually satisfactory terms cannot be agreed upon, that the Board of Levee Commissioners of the Orleans Levee District will take steps to acquire the interest by condemnation procedure.”
On June 12,1982, Seaway sold its property, including the 25 acre project area, to Newport. Up until that time, no compensation for the taking had been paid to Seaway, nor had any expropriation proceedings been instituted. The cash sale was silent as to the transfer of Seaway's rights to claim compensation. On May 15, 1985 an Act of Correction and Clarification was executed between Seaway and Newport which states that it was the intention of Seaway to transfer all rights in and to the subject property, both real and personal, to Newport. On December 13, 1985 the Levee Board instituted these proceedings against Newport, which were ultimately dismissed on the Levee Board’s own motion.
Newport complains that:
1) Procedurally, the trial court erred in allowing the Levee Board to proceed with a motion to dismiss its own expropriation suit filed under R.S. 38:351 et seq.
2) The prescriptive plea under the St. Julien doctrine or R.S. 19:14 is not applicable to this case; and alternatively, the Levee Board is estopped from urging prescription.
3) The Court was in error in failing to consider proffered evidence which clearly establishes a transfer of Seaway’s rights.
4) The valuation of its property should be determined as of the date of the expropriation proceedings.
PROCEDURAL POSTURE OF THE CASE
We admit, at first glance, the procedural posture of this case is somewhat confusing. The Levee Board instituted an expropriation suit pursuant to the authority granted in R.S. 38:351, et seq. It then filed a motion to dismiss its own action claiming (1) the party defendant was improper and (2) any claims for the compensation it judicially admitted was due, was, in fact, not due because of prescription.
The trial court, recognizing this perplexing dilemma, treated the motion to dismiss as exceptions of prescription and no right of action to the reconventional claim of Newport for additional compensation. Presumably, if Newport had not contested the adequacy of the compensation, those “exceptions” would be moot. However, as suggested by Newport, a more proper procedural classification of the motion to dismiss is a request for declaratory judgment. When the Levee Board sought to dismiss its own action on the grounds asserted, if, in effect, sought to have the court declare whether Newport was entitled to compen *409 sation for the 25 acres. Although presented in an unorthodox manner, these issues were determined by final judgment. In the interest of judicial economy, we therefore address those issues which were determined by the trial court after a full eviden-tiary hearing.
PRESCRIPTION
Newport argues that the May 1971 agreement granted the Levee Board only a right of entry to the subject property in order to construct a flood control structure. That in so doing, the Levee Board acquired no rights in the property but that they (Levee Board) would, at some future time, acquire those rights and compensate the landowner therefor. Thus, they argue, a servitude was not acquired in good faith, nor was there consent of the landowner, and therefore, the St. Julien doctrine (R.S. 19:14) is inapplicable.
The case of St. Julien v. Morgan Louisiana and Texas R.R. Co., supra, established the doctrine that a public or quasi-public corporation with powers of expropriation could acquire a servitude over the land of another without legal expropriation if that landowner consented or acquiesced. That doctrine, subsequently referred to as the St. Julien doctrine, remained in our law until its short demise in 1976. In Lake Inc. v. Louisiana Power & Light Co., 330 So.2d 914 (La.1976), the Supreme Court recognizing the conflict St. Julien presented with the provisions of our Civil Code governing the creation of servitudes, overruled that doctrine as it applied to discontinuous servi-tudes. Implicit in that holding is the conclusion that St. Julien would apply with respect to continuous servitudes as long as the time limitations of the Civil Code were adhered to. Thus with respect to continuous servitudes, St. Julien could be consistent with the Civil Code.
In response to that decision, however, the Louisiana legislature passed Act 504 of 1976. That act, codified at La.R.S. 19:14, provides in pertinent part:
“In any case where the state or its political corporation or subdivision has actually, in good faith believing it had authority to do so, taken possession of privately owned immovable property of another, and constructed facilities upon, under or over such property with the consent or acquiescence of the owner of the property, such owner shall be deemed to have waived his right to contest the necessity for the taking and to receive just compensation prior to the taking, but he shall be entitled to bring an action for such compensation, to be determined in accordance with the provisions of Section 9 of this Title, for the taking of his property or interest therein, the just compensation to be determined as of the time of the taking of the property, or right or interest therein, and such action shall proceed as if the state, its political corporation or subdivision had filed a petition for expropriation as provided for in Section 2.1 of this Title.”
Thus, the legislature’s quick response to the Lake decision resulted in a statutorily created St. Julien doctrine, but without resolution of the conflicts with the Civil Code noted in that decision. Even though Title III and Title IV of our Civil Code, dealing with personal and predial servitudes were amended and reenacted by Acts 1976, No. 103, and Acts 1977, No. 514, respectively, the conflicts noted in Lake still exist. While R.S. 19:14 fails to specify the length of time a public body must possess in order to establish a servitude, Civil Code Article 742 provides that an apparent servitude may be acquired by ten years peaceable possession, in good faith and by just title, or thirty years without title or good faith. The comment to Article 544 suggests that a usufruct (personal servitude) may be acquired by prescription. More probably, the servitude sought by the Levee Board in this case is a right of use that should be regulated by the prescriptive period of Article 742. La.C.C. Arts. 639 and 645.
Despite the legislature’s failure to reconcile the codal conflicts, R.S. 19:14, as a legislative enactment, has equal status with our codal provisions. Trustee Corp. v. Allen, 359 So.2d 715 (La.App. 4th Cir.1978). And the enactment’s failure to provide for a prescriptive period has necessitated judicial interpretation of intent. This *410 Court in Brooks v. New Orleans Public Service, 370 So.3d 686 (La.App. 4th Cir.1979) writs denied 373 So.2d 512 (La.1979), held that the two year period set forth in R.S. 19:2.1(B) is applicable. That provision provides:
“All claims for property by, or for damages to the owner caused by the expropriation of property pursuant to R.S. 19:2 shall be barred by the prescription of two years commencing on the date on which the property was actually occupied and used for the purposes of the expropriation.”
This result was also suggested in the later case of Succession of Rovira v. Board of Commissioners, 418 So.2d 1382 (La.App. 4th Cir.1982), writs denied 423 So.2d 1147 (La.1982), although prescription was not applied because of lack of notice to the owners.
Thus, the trial court, relying on the Brooks, case and its application of the two year limitation, held that the landowner’s rights to compensation had prescribed.
The legislature, by statute created a method of establishing a servitude by a public body or corporation, with expropriation powers, not provided for in our Civil Code. Unfortunately, the statute ignores the Civil Code provisions on creation of servitudes and requires judicial interpretation to “fill in the gaps”. The Brooks case imposed the two (2) year period of R.S. 19:2.1(B) as the appropriate prescriptive period. We question the wisdom of that decision since it has been held that the two year period only applies to claims for compensation after there has been a legal expropriation. A.K. Roy, Inc. v. Board of Commissioners, 237 La. 541, 111 So.2d 765 (1959); Mississippi River Transmission Corp. v. Tabor, 757 F.2d 662 (5th Cir.1985). We think the better reasoning would have been to apply the rules established by our Civil Code. However, because of the result we reach in this case, we reluctantly follow the Brooks decision and apply the two year prescriptive period.
Once the project was completed, presumably on September 13,1974 as evidenced by the letter of completion from the Corps of Engineers to the Levee Board, the two year prescriptive period for the landowner to seek compensation began to run. Factually, the evidence substantiates the finding that the landowner consented to the construction of the flood control structures. The May 1971 agreement acknowledges this consent, and certainly the structure was visible to the landowner. And, the Levee Board was in good faith in its belief that it had the authority to enter the property and construct the flood control structure.
However, even though the prescriptive period presumably had accrued on September 13, 1976, we find the evidence overwhelming that the Levee Board tacitly, if not expressly, renounced this prescriptive plea and created a new obligation to compensate the landowner.
Although the effect of the Brooks decision is the creation of a servitude once the two year period has accrued, in actuality that period is a liberative prescriptive period. It bars any claims for compensation if not asserted within two years from the date the property was actually occupied.
Liberative prescription is a method of barring actions because of inaction for a period of time. La.C.C. Art. 3447. A civil obligation that is barred by prescription survives as a natural obligation of the debt- or. La.C.C. Art. 1762; Succession of Aurianne, 219 La. 701, 53 So.2d 901 (1951). The natural obligation may be sufficient cause for a new promise, and thus a contract for its performance is onerous. La. C.C. Art. 1761; Succession of Aurianne, supra.
Once prescription has accrued, it may be renounced. La.C.C. Art. 3449 Renunciation may be tacit or express. La.C. C. Art. 3450. “Tacit renunciation results from circumstances that give rise to a presumption that the advantages of prescription have been abandoned.” Id. It has been held that a renunciation takes place only when the intent to renounce is clear from either the words or actions of the party in whose favor prescription had accrued. Corsey v. State Dept. of Correc *411 tions, 366 So.2d 964 (La.App. 1st Cir.1978), reversed on other grounds, 375 So.2d 1319 (La.1979). The promise to pay a debt after prescription accrues creates a new obligation on the debtor. Service Parts Company v. Culpepper, 142 So.2d 498 (La.App. 2nd Cir.1962), citing Succession of Kugler, 23 La.Ann. 455.
As a result of various negotiations between Newport and the Levee Board concerning additional property needed for continuation of the flood control projects, the Levee Board sent a letter to Newport on December 11, 1984 which stated:
“The Levee Board acknowledges that it has been negotiating with Newport toward settlement of all claims between them relating to the effects of the Lake Pontchartrain and Vicinity Hurricane Protection Project, Chalmette Area Plan, upon the Newport Reach. To this end, the Levee Board today is executing a compromise-settlement agreement with Newport disposing of the issue of a levee servitude and temporary construction easement and reserving the unresolved issues concerning the construction and effects of the Bayou Bienvenue Flood Control Structure and Dock Area and Outfall Canal Area portion of the Hurricane Protection Project. The Levee Board acknowledges that some quantum is due Newport for that construction and effects under prior right-of-entry agreement. However, the Levee Board and Newport have been unable to agree as to their respective, rights to, in and to ownership and use of, the lands involved.
The Levee Board intends to institute judicial proceedings in a court of competent jurisdiction within one year to resolve all such claims and issues remaining between the parties.” (emphasis added)
On the next day, December 12, 1984, Newport and the Levee Board executed a Compromise and Settlement Agreement relative to the acquisition of other levee servitudes and easements. That agreement provided, in part:
“Levee Board Acknowledgment of Compensation and Reservation of Newport’s Right to Compensation for Prior Flood Protection Project Work. The Levee Board acknowledges that compensation and/or damages are due to Newport under prior rights-of-entry for the lands involved in or affected by work performed to date by the Levee Board and/or by the Corps in the Flood Control Structure and Dock Area and in the Channel Area designated in Exhibit ‘A’.”
In accordance with its letter of December 11,1984, and its acknowledgment that compensation was due Newport for the subject property, the Levee Board instituted these expropriation proceedings pursuant to La. R.S. 38:351.
The above described actions of the Levee Board convince us that any prescriptive plea they had was renounced, at least tacitly, if not expressly. And further, their natural obligation to compensate Newport became a civil obligation by their agreement that compensation and/or damages were due for prior flood control work. At least part of the cause, or reason for Newport entering the agreement with the Levee Board was its recognition of Newport’s right to compensation. The natural obligation is sufficient cause for the agreement. The Levee Board cannot now complain, after filing this expropriation suit, that Newport’s rights have prescribed.
NEWPORT AS THE PROPER PARTY
The trial court concluded that the landowner’s right to compensation is a personal right, and under St. Julien it does not pass with the transfer of land. There must be an express transfer or assignment of that personal right. This is a correct legal conclusion.
Admittedly, the cash sale to Newport on June 17, 1982 did not contain a transfer of those rights. However, Newport offered in evidence an Act of Correction, dated May 15, 1985, that expressly conveyed Seaway’s compensation rights to Newport. The trial court held this document to be invalid because the corporation had been dissolved in 1983, and thus the resolution authorizing Mr. Waters, the president, to execute the document, could *412 not authorize action on behalf of a dissolved corporation.
We find no error in this portion of the trial court’s ruling. However, the trial court failed to consider Newport’s argument that Mr. Waters, as the duly appointed liquidator, was, and is vested with the authority to convey any assets of the dissolved corporation. And further, after the case was submitted, but prior to the trial court’s decision, Newport filed in the record, as a proffer, a second act of correction dated November 17, 1986. That document is purportedly executed by Mr. Waters in his capacity as liquidator, rather than as president, and conveys Seaway’s right to compensation to Newport. Assuming the authenticity of the document, it clearly supports a transfer of the personal right to compensation.
Although the trial court allowed the additional evidence as a proffer and did not consider same, we believe judicial economy, and the unusual circumstances of this case require a remand to determine if Newport is the legal owner of Seaway’s right to compensation. Because we hold that prescription does not bar the claim for damages, either Seaway or Newport is the owner of that claim. It would serve no useful purpose to dismiss the entire action only to have the same issue litigated again in subsequent expropriation proceedings.
VALUATION
This issue was not heard by the trial court, and thus is presented for the first time on appeal. We decline to address this question until there is a ruling by the trial court.
DECREE
This matter is reversed and remanded to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.