Dear Mr. Turner:
You have requested an opinion from this Office regarding the application of La. R.S. 19:14 (commonly referred to as the "St Julien doctrine" or the "doctrine of unopposed use") to levees within the Lake Borgne Basin Levee District (hereinafter "levee district"). Specifically, you ask whether the levee district can rely on R.S. 19:14 to establish that it has acquired all rights of use necessary for the ongoing operation, maintenance, repair and rehabilitation of its levees, including the right to remove obstructions and encroachments from its levees. In short, we believe the levee district can rely on R.S. 19:14 to show that it has acquired all rights of use necessary for these activities, as will be discussed below.
Before beginning our legal analysis, we note that the term"right of way" is a common law term not found in the Louisiana Civil Code. It is similar to the term "right of use", which is used in Louisiana law and jurisprudence and is defined in Civil Code Articles 639—645. Civil Code Art. 639 defines a "right ofuse" as a "personal servitude which confers in favor of a person a specified use of an estate less than full enjoyment". Wherever the term "right of way" appears in this opinion, it should be assumed that it refers to the personal servitude of "right ofuse" as defined by Louisiana law and jurisprudence.
Expropriation and the History of La. R.S. 19:14
Expropriation, or the taking of private property without the consent of the owner, is permitted by Louisiana Constitution Art.1, Sec. 4, provided the taking is for a public purpose or use and just compensation is paid to the owner of the property. Title 19 of the La. Revised Statutes,[1] provides specific requirements and procedures an entity must follow to expropriate private property, such as timely providing specific Information to owners and filing an expropriation petition in district court. The property owner is *Page 2 
entitled, among other things, to a trial to determine the necessity for the taking and the just compensation to be paid.
La. R.S. 19:14 (cited below) provides a statutory method by which the State or its political subdivision may acquire an interest in private property when it in good faith takes possession of the property and constructs facilities on it with the consent or acquiescence of the owner. This statute, contained in the general provisions on expropriation, allows the state or its political subdivision to acquire an interest in private property even when it technically may not a have met all of the requirements found in the general expropriation provisions.[2]
La. R.S. 19:14 was enacted to "codify" jurisprudence in existence for approximately 100 years before the La. Supreme Court overturned it in 1976. The concept embodied in R.S. 19:14
is a method of acquiring a servitude by "estoppel" that was established in the early case of St. Julien v. Morgan L. T.R.Co., 35 La. Ann. 924 (1883). The concept and the jurisprudential rule allowing the creation of servitudes by estoppel became known as the "St. Julien doctrine". The historical development of the St. Julien doctrine that culminated in the enactment of R.S.19:14 was examined by the La. First Circuit in Cancienne v.Lafourche Parish Police Jury, 423 So.2d 662, 665 (La.App. 1 Cir. 1982). The Cancienne Court provided:
 In St. Julien, the defendant railroad company entered onto plaintiffs' land without permission and constructed a railway upon the land without purchasing or expropriating the property. The court there said:
 . . . the landowner did not invoke the arm of the law at the time when it could have been of service to him, but on the contrary acquiesced in the defendant's taking possession and using his property, encouraged it to prosecute its work by abstaining from any attempt to prevent it and made no complaint in a court of law of the injuries inflicted upon him until the defendant had expended large sums of money in completing its line. Having thus permitted the use and occupancy of his land and the construction of a quasi-public work thereof without resistance or even complaint, he cannot afterwards require its demolition, nor prevent its use, nor treat the company erecting it as his tenant. He is not debarred from an action for damages by reason of the taking of the land and for its value, but having acquiesced in the entry and encouraged it he did not invite it, he cannot afterward's affect to treat it as tortuous. Considerations of public policy, not less than the suggestions of natural justice, require that in such a case the owner shall not be permitted to reclaim his property free from the servitude he has *Page 3 
permitted to be imposed upon it, but shall be restricted to his right of compensation. Goodin v. Cincinnati, 18 Ohio St., 169.
 Therefore, by jurisprudential rule, a new theory was created allowing the creation of servitudes by estoppel. From 1879 until 1976, a public or quasi public corporation with powers of expropriation could acquire a servitude over the land of another without expropriation if the landowner consented or acquiesced in the construction. The landowner could not later reject the occupant, but was relegated to an action for compensation and damages. The theoretical justification of St. Julien was the combined presumed consent of the owner of the land and the public interest. To avoid the needless waste and public inconvenience involved in removing expensive works, the courts established the fiction that the owner had granted voluntarily what an expropriation suit otherwise would have compelled him to yield.
 St. Julien was re-affirmed in many later cases and remained the rule of law until 1976 when Lake, Inc. v. La. Power and Light Company, 330 So.2d 914 (La. 1976) was decided.
 . . . Lake overruled St. Julien and its progeny as to prospective conduct because St Julien
sanctioned a method of creating servitudes that was contrary to the mandates of the Civil Code. In addition, Lake rejected the policy rationale of St. Julien, finding that although it may have once been justified by public necessity, now it was no longer needed.
 Cancienne v. Lafourche Parish Police Jury at 665.
Shortly after the Louisiana Supreme Court's decision in theLake case eliminated the St. Julien doctrine, the La. Legislature enacted La. R.S. 19:14, which statutorily re-created the doctrine.
R.S. 19:14 provides, in pertinent part, as follows:
 In any case where the state or its political corporation or subdivision has actually, in good faith believing it had authority to do so, taken possession of privately owned immovable property of another, and constructed facilities upon, under or over such property with the consent or acquiescence
of the owner of the property, such owner shall be deemed to have waived his right to contest the necessity for the taking and to receive just compensation prior to the taking, but he shall be entitled to bring an action for such compensation . . . for the taking of his property or interest therein, the just compensation to be determined as of the time of the taking of the property, or right or interest therein, and such action shall proceed as if the state, its political corporation or subdivision *Page 4 
had filed a petition for expropriation as provided for in Section 2.1 of this Title. [Emphasis added]
This statute allows a political subdivision, like a levee district, to establish that it acquired a servitude over private property (i.e., its levees) if it can show that it in good faith took possession of the property and constructed facilities upon, under or over the property, with the acquiescence or consent of the landowner.
Background
As background information, Hurricane Katrina made landfall in Louisiana on August 29, 2005 and caused significant damage to the levees in St. Bernard Parish. As part of the Katrina recovery effort, the levee district and St. Bernard Parish, acting as local sponsors,[3] signed a cooperative agreement with the U.S. Army Corps of Engineers authorizing the Corps to rehabilitate and repair the levees, including the removal of obstructions and encroachments on the levees.
This agreement required the local sponsors to provide right of entry to the Corps to all areas needed to complete the repair and rehabilitation of the levees. The levee district provided the Corps a right of entry to the requested areas, and the based on this authorization, the Corps commenced the work. When the Corps' right of entry was questioned by a private land owner, the Corps turned to the levee district for evidence of its authority to grant the right of entry (i.e., documentation of the levee district's servitude of right of use over its levees). When the levee district could not readily locate documentation establishing its rights of use over all areas of the levees, the application of R.S. 19:14 was considered as an alternative way of establishing the levee district's rights of use over the levees it operates and maintains.
The levees in question were constructed approximately 30-40 years ago by the levee district, or an entity on behalf of the levee district (i.e., DOTD or USACE).[4] As construction of each levee was completed, the levee district assumed operation and maintenance of the levee and continues to do so today.
Beginning in the 1950s, the levee district passed several resolutions pertaining to these projects, including resolutions passed on (a) April 20, 1956 to construct the "Back Canal and Outfall Canal" and "Construction of a Spoil Levee"; (b) October 26, 1967 to appropriate rights of way to build the "Caernarvon to Verret Back Protection Levee" in the same location. (Also known as the "Chalmette Back Levee"); (c) April 11, 1967 to appropriate rights of way to build the "Chalmette Area Plan, St. Bernard Parish, Lake *Page 5 
Pontchartrain and Vicinity, Louisiana Project"; and (d) May 13, 1969 to appropriate additional rights of way for levee construction "along the Mississippi River-Gulf Outlet".
Application of La. R.S. 19:14 to the Lake Borgne Basin LeveeDistrict
We turn now to the question of whether the levee district can establish that it acquired the rights of use necessary for the ongoing operation, maintenance, rehabilitation and repair of its levees, including the right to remove obstructions and encroachments from the levees. Pursuant to R.S. 19:14, the levee district has acquired the necessary rights of way over its levees if it did the following:
 (1) Took possession of the property in good faith believing it had a right to do so
 (2) Constructed works upon, under, or over such property
 (3) With the consent or acquiescence of the owner of the property
This office is of the opinion that the Lake Borgne Basin Levee District has acquired rights of use over the levees that it constructed and has operated and maintained for over 30 years. First, the levee district, or an entity on behalf of the levee district, took possession of the property and constructed these levees beginning in the 1950s and continues to operate and maintain them today. The resolutions referenced in the background section are indicative of the levee district's good faith belief that it had a right to take the property for the levees. Second, the levee district constructed levees and other works on the property and continues to operate and maintain them today. Thus, assuming the acquiescence or consent of the property owners, the levee district has acquired the rights of use necessary to construct, operate, maintain, repair and rehabilitate its levees, including the right to remove obstructions and encroachments on the levees. Pursuant to R.S. 19:14, private land owners are deemed to have waived their rights to contest the taking.
While landowners may not contest the necessity for the takings, they may still bring actions for subsequent just compensation. The compensation is to be determined as of the time of the takings, and the actions shall proceed as if the levee district had filed petitions for expropriation pursuant to R.S. 19:2. However, in this instance, all actions for compensation have prescribed. La. R.S. 13:5111 provides, in pertinent part, "[Actions for compensation for property taken by . . . a political subdivision . . . shall prescribe three years from the date of such taking."
The levees in question were constructed over thirty years ago when the St. Julien doctrine was in effect in our jurisprudence. All of the levees had been completed for more than three years when the St. Julien doctrine was abolished by the court's decision in Lake, and thus were already prescribed under the existing jurisprudence. Moreover, even if some rationale could be found to begin the prescriptive period in 1976 when the St. Julien doctrine was revived by the enactment of La. R.S.19:14,[5] all actions would have prescribed in 1979. *Page 6 
It is also worth noting that the St. Julien doctrine creates a personal cause of action. Therefore, subsequent landowners do not have standing to bring an action for activity that occurred during their ancestor-in-title's ownership. Brooks v. NewOrleans Public Service, Inc., 370 So.2d 686, 690 (La.App. 4 Cir. 1979). See also La. Atty. Gen. Op. No. 05-0275.
We hope that this sufficiently answers your inquiry, however if we may be of further assistance please do not hesitate to contact our office.
Yours truly,
 CHARLES C. FOTI, JR. Attorney General
 By: _________________________________ Megan K. Terrell Assistant Attorney General
[1] 19:1 et seq., Expropriation.
[2] R.S. 19.1 through 19.15.
[3] 42 U.S.C.A. § 1962d-5b requires the U.S. Army to enter into a written cooperative agreement with a non-Federal interest, commonly referred to as a local sponsor or public sponsor, prior to beginning construction on water resources projects.
[4] La. Department of Transportation and Development or United States Army Corps of Engineers.
[5] Acts 1976, No. 504.