J^CLARENCE E. McMANUS, Judge.
STATEMENT OF THE FACTS
H. Thomas Bourgeois (“Bourgeois”) and four siblings own property along the Mississippi River in St. John the Baptist Parish (“the Parish”). This property is adjacent and upriver to the property owned by Nalco Chemical Company (“Nal-co”). Bourgeois lives on the property which he partially owns. In 1987, Nalco and Louisiana State Gas Corporation (“LSGC”) contracted for LSGC to supply natural gas to Nalco’s plant via a pipeline. Originally, the pipeline was to be laid near Plantation Oaks subdivision. After much protest, a new route was proposed which involved the pipeline being laid along Highway 44. The pipeline was to be in the highway right of way and would run along Bourgeois’ property.
In 1988, before construction began, LSGC sought a Project Permit from the Louisiana Department of Transportation and Development (DOTD). LSGC also sought a letter of no objection from the Parish and an Order from the Pipeline Division of the Louisiana Office of Conservation.
1 oOn May 2, 1988, LSGC received the letter of no objection from the Parish. On May 18, 1988, the DOTD issued a Project Permit and on May 27, 1988, LSGC received an Order from the Office of Conservation.
After receiving the above permits, but prior to construction of the pipeline, LSGC sent out a surveying crew. When the crew was performing work near Bourgeois’ property, he confronted them and asked what right they had to be on his property. He then moved his truck to block the surveying instruments. Edward Conder (“Conder”), Project Engineer and field liaison to LSGC, went to the scene and talked to Bourgeois. Conder told Bourgeois that the project permit and letter of no objection provided authority to construct the pipeline. Bourgeois stated he believed the proposed route was not within the right of way, but was on his property. Conder explained to Bourgeois why the route was in the right of way. Bourgeois made no further objection at that time. Conder then told him that the construction crew would be there in a few weeks. Again, Bourgeois did not object. Conder then reported the incident to John Raber, manager of engineering for LSGC.
LSGC began construction of the pipeline on June 16, 1988. On that day, work was performed on Bourgeois’ property. Con-der was present and saw Bourgeois arrive home, while the construction was in progress. Bourgeois never approached anyone and construction was completed. The pipeline was put into service on June 16, 1988.
On July 11, 1988, Bourgeois called Con-der to express his dissatisfaction with the post-construction clean-up. On July 13, 1988, Bourgeois’ attorney, Fred DeFran-cesch wrote a letter to LSGC questioning the presence of the right of way. Mr. DeFrancesch sent another letter on November 9, 1988 to LSGC regarding the right of way stating that title research showed only one reference to the highway *695 department. The letter further stated that if the right of way exists, it is only for | maintenance of the shoulder, which can only be three feet and would have been acquired through acquisitive prescription.
Bourgeois filed a Petition for Damages on May 12, 1989 alleging LSGC committed trespass. On December 28, 2001, the trial court issued a judgment as to the issue of liability in favor of Bourgeois. The trial court found that there was nothing in the record which indicated that the DOTD claimed ownership of the right of way. Further, there was no evidence of adverse possession by the DOTD, which is a prerequisite of acquisitive prescription. The trial court also found that Bourgeois’ consent, as owner of the property, was a necessary prerequisite and his consent was not obtained. Under the St. Julien Doctrine[1], the trial court found that Bourgeois appropriately contested the construction. The trial court further found that it could not conclude that LSGC acted in good faith in obtaining the permits and letters.
LSGC now appeals alleging five assignments of error. First, LSGC argues the trial court erred by inverting the burden of proof on the element of ownership when Bourgeois failed to present evidence of ownership and LSGC presented evidence questioning the ownership. Second, LSGC contends the trial court erred in applying the acquiescence prong of the St. Julien doctrine by relying on Bourgeois’ post-construction protest. Third, LSGC contends the trial court erred in finding that Bourgeois’ actions to protest the pipeline construction were adequate to negate the St. Julien doctrine. Fourth, LSGC argues that the trial court erred in applying the good faith prong of the St. Julien doctrine by examining LSGC’s good faith in obtaining the permits and letters rather than the good faith in possessing that portion of the right of way on with the pipeline was constructed. And finally, LSGC contends the trial court erred in finding that LSGC did not act |Kin good faith when the evidence shows that LSGC reasonably believed it had authority to construct the pipeline.
DISCUSSION
LSGC argues that Bourgeois presented no evidence of ownership of the property at trial and the trial court incorrectly applied the burden of proving that ownership. The trial court’s findings are reviewed under a manifest error standard by this Court. Rosell v. ESCO, 549 So.2d 840 (La.1989). An appellate court may not set aside the trial court’s findings in the absence of manifest error or unless the finding is clearly wrong. Id.
In this case, the trial court found that Bourgeois owned the property in question. At trial, Bourgeois testified that he owned the property and he explained how he had obtained the property and the extent of the boundaries of the property. Bourgeois’ former attorney, Fred DeFran-cesch, testified that he had performed the title search in the public records. He concurred that Bourgeois owned the property. The only argument LSGC made at the trial was that the DOTD had acquired the property in question by acquisitive prescription. LSGC presented no other evidence that Bourgeois was not the owner of the property. The trial court rejected LSGC’s argument regarding the DOTD’s possible acquisition of the property finding that the DOTD was not a party to the action and had not asserted this claim at *696 any other time. Further, the trial court found no evidence of adverse possession, which is a prerequisite to acquisitive prescription.
We agree with the trial court and reject LSGC’s argument regarding the DOTD’s acquisition of the property. We also reject LSGC’s argument that the trial court inverted the burden of proof of ownership. The trial court listened to the evidence presented by Bourgeois and LSGC and concluded that Bourgeois owned the property. As a result, we find no error in the trial court’s conclusion that Bourgeois owned the property in question.
| (¡Next, LSGC argues that Bourgeois gave it a right of way for the pipeline by not protesting prior to or during construction, as required by LSA R.S. 19:14, and thus, LSGC was in good faith believing no further right of way was necessary. The trial court found that Bourgeois’ consent in this matter was a prerequisite to LSGC constructing the pipeline on his property. LSGC argued that LSA R.S. 19:14 applied and relieved the necessity for consent because Bourgeois didn’t protest. LSA R.S. 19:14 provides, in part:
... In the case where any corporation referred to in Section 2 of this Title has actually, in good faith believing it had the authority to do so, taken possession of privately owned immovable property of another and constructed facilities upon, under or over such property with the consent or acquiescence of the owner of the property, it will be presumed that the owner of the property has waived his right to receive just compensation prior to the taking, and he shall be entitled only to bring an action for judicial determination of whether the taking was for a public and necessary purpose and for just compensation to be determined in accordance with Section 9 hereof, as of the time of the taking of the property, or right or interest therein, and such action shall proceed as nearly as may be as if the corporation had filed a petition for expropriation as provided for in Section 2.1 of this Title.
This statute has come to be known as the “St. Julien” doctrine, since it was first enumerated in St. Julien v. Morgan’s Louisiana & Texas Railroad Co., 35 La.Ann. 924 (1883). According to this doctrine, if the landowner fails to protest prior to or during construction, the owner is deemed to have waived his right to contest and receive compensation for the taking. In this case, the trial court found that Bourgeois had protested the construction of the pipeline. Therefore, the trial court found the St. Julien doctrine did not apply. Again, we find no error in the trial court’s finding that Bourgeois timely protested the construction of the pipeline and therefore, LSA R.S. 19:14 does not apply. Thus, the trial court correctly held that Bourgeois’ consent was a prerequisite to the construction of the pipeline. As a result, we also agree with the trial court that LSGC did not act in good faith in obtaining the necessary consents and permits before construction of the pipeline. |7Had LSGC properly checked the public records, it would have known that Bourgeois owned the property and the DOTD had no interest in the property where the pipeline was laid. Further, this work differed from previous work performed by the DOTD and the Parish because it did not benefit Bourgeois, as property owner. Therefore, LSGC could not rely on this previous work to serve as a blanket consent by Bourgeois to lay this pipeline on his property.
Accordingly, we affirm the trial court’s judgment in favor of H. Thomas Bourgeois and assess all costs of this appeal to the *697 defendant, Louisiana State Gas Corporation.
AFFIRMED.

. St. Julien v. Morgan’s Louisiana & Texas Railroad Co., 35 La. Ann.924 (1883); LSA R.S. 19:14.