890 So.2d 634 (2004)
ACADIAN GAS PIPELINE SYSTEM
v.
H. Thomas BOURGEOIS.
No. 04-CA-578.
Court of Appeal of Louisiana, Fifth Circuit.
November 30, 2004.
*635 Anthony J. Nobile, Martin, Himel, Peytavin & Nobile, Lutcher, LA, for Defendant/Appellant, H. Thomas Bourgeois.
*636 John M. Wilson, Jonathan A. Hunter, H.S. Bartlett, III, Liskow & Lewis, New Orleans, LA, for Plaintiff/Appellee, Acadian Gas Pipeline System.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY, and SUSAN M. CHEHARDY.
SUSAN M. CHEHARDY, Judge.
This is an expropriation suit by a pipeline company to obtain a servitude for a pre-existing gas pipeline running across the defendant's land. The trial court granted the servitude, fixed the landowner's compensation, and awarded attorney's fees to the landowner. The landowner appealed and the pipeline company answered the appeal. We affirm, but remand for correction of the judgment to describe with particularity the property and the right granted.

FACTS
H. Thomas Bourgeois owns the following property in Mount Airy, St. John the Baptist Parish:
A certain tract of land, situated in Section Seven (7), Township Eleven (11) South, Range Six (6) East, Parish of St. John the Baptist, State of Louisiana, on the left bank of the Mississippi River, measuring three-fourths (3/4) of one arpent front on the said river by a depth to the 40 arpent line between parallel lines; bounded on the upper line by the property now or formerly of Octave Vicknair or assigns, on the lower line by the property now or formerly of James V. Chenet.
Louisiana Highway 44 (also known as River Road) runs across the property in the part closest to the river. In 1988 Louisiana State Gas Corporation ("LSGC") constructed a four-inch pipeline across the portion of Bourgeois' property adjacent to La. Hwy. 44. The pipeline carries natural gas to Nalco Chemical Company in Garyville. At the time LSGC advised Bourgeois that the pipeline lay within the Highway 44 right-of-way and that the appropriate state and parish authorities had granted permission for construction of the pipeline.
Bourgeois objected to the construction and asserted that the route of the pipeline was not within the highway right-of-way, but rather was on his property. In 1989 Bourgeois filed suit for trespass against LSGC.
In 1995, while the trespass suit was pending, Acadian Gas Pipeline System ("Acadian") acquired LSGC. On December 28, 2001 the trial court rendered judgment in the trespass suit, on liability only, in favor of Bourgeois against LSGC. LSGC appealed.
On October 23, 2002, while the ruling in the trespass suit was pending on appeal, Acadian filed this suit for expropriation. Acadian sought to acquire from Bourgeois a permanent servitude across his land 30 feet wide and 9.12 rods long.
On January 23, 2003, the decision in the trespass suit was affirmed by this Court. Bourgeois v. Louisiana State Gas Corporation, 02-787 (La.App. 5 Cir. 1/28/03), 836 So.2d 693.
On January 30, 2003  one week after this Court's decision in the trespass suit was rendered  the expropriation suit went to trial. The trial was continued to and completed on February 25, 2003. Subsequently, in May 2003, the supreme court denied writs in the trespass case. Bourgeois v. Louisiana State Gas Corporation, 03-785 (La.5/9/03), 843 So.2d 407
On November 7, 2003, the trial court rendered a judgment in the expropriation suit that granted the servitude in favor of Acadian, fixed compensation to Bourgeois *637 in the amount of $1,880.00, and awarded attorney's fees in the amount of $7,500.00.
The trial court found that Acadian possessed expropriating authority, that there is a public purpose for the expropriation, that Acadian had made a good faith offer to purchase the servitude, and that Bourgeois failed to prove that the pipeline route selection at the time of the initial installation was in bad faith.
Bourgeois has appealed. His assignments of error are directed at two main issues, the trial court's denial of Bourgeois' exception of lis pendens and the trial court's finding that Bourgeois failed to prove bad faith in selection of the pipeline route. He seeks reversal of the judgment granting the servitude and asks for damages and removal of the pipeline from his property.
Acadian has answered the appeal, challenging the award of attorney's fees.

LAW
"Property shall not be taken or damaged by any private entity authorized by law to expropriate, except for a public and necessary purpose and with just compensation paid to the owner; in such proceedings, whether the purpose is public and necessary shall be a judicial question." La. Const. Art. 1, § 4(B). In every expropriation, the owner shall be compensated to the full extent of his loss. Id.
For purposes of expropriation, the term "property" means immovable property, including servitudes and other rights in or to immovable property. La.R.S. 19:1. Where a price cannot be agreed upon with the owner, certain legal entities are entitled to expropriate needed property, including "[a]ny domestic or foreign corporation created for the piping and marketing of natural gas for the purpose of supplying the public with natural gas." La.R.S. 19:2(5). Another entity authorized to expropriate is "any partnership, which is or will be a natural gas company or an intrastate natural gas transporter as defined by federal or state law, composed entirely of such corporations or composed of the wholly owned subsidiaries of such corporations." Id.
The owner shall be compensated to the full extent of his loss. La.R.S. 19:9(B). "In estimating the value of the property to be expropriated, the basis of assessment shall be the value which the property possessed before the contemplated improvement was proposed, without deducting therefrom any amount for the benefit derived by the owner from the contemplated improvement or work." La.R.S. 19:9(A). "If the highest amount offered is less than the compensation awarded, the court may award reasonable attorney fees." La.R.S. 19:8.
In the case where any corporation referred to in Section 2 of this Title has actually, in good faith believing it had the authority to do so, taken possession of privately owned immovable property of another and constructed facilities upon, under or over such property with the consent or acquiescence of the owner of the property, it will be presumed that the owner of the property has waived his right to receive just compensation prior to the taking, and he shall be entitled only to bring an action for judicial determination of whether the taking was for a public and necessary purpose and for just compensation to be determined in accordance with Section 9 hereof, as of the time of the taking of the property, or right or interest therein, and such action shall proceed as nearly as may be as if the corporation had filed a petition for expropriation as provided for in Section 2.1 of this Title. [Emphasis added.]
La.R.S. 19:14. This statute codifies the principles of the St. Julien doctrine, first *638 enunciated in St. Julien v. Morgan Louisiana & Texas Railroad Co., 35 La.Ann. 924 (1883). It was added by Acts 1976, No. 504, § 1, following a 1976 Louisiana Supreme Court decision that partly overruled the jurisprudential doctrine.
In the prior suit for trespass, the trial court determined that Bourgeois timely protested the construction of the pipeline, so that La.R.S. 19:14 did not apply. That ruling was upheld on appeal. Bourgeois v. Louisiana State Gas Corporation, 02-787, p. 6, 836 So.2d at 696.[1]

DENIAL OF EXCEPTION OF LIS PENDENS
Prior to filing an answer to Acadian's petition for expropriation, Bourgeois filed exceptions of lis pendens, prematurity, and nonjoinder of indispensable parties, all of which were denied. Bourgeois contends the trial court erred in denying his exception of lis pendens, for the following reasons:
1. The trial court committed legal error by confusing "cause" and "cause of action,"... resulting in the court not making a factual examination of the record of the initial trespass action to determine what "grounds" were decided in the prior case....
2. The trial court committed manifest error by failing to recognize the similarity of "parties," "cause" and "demand" in the present suit with the assertion of the St. Julien Doctrine defense in the previous trespass action.

Admission of Trespass Suit Record in Evidence
First, as a housekeeping matter, we note that Bourgeois' argument refers repeatedly to the record of the trespass action. That record was not lodged with the record of this expropriation suit, but Bourgeois filed a motion to supplement the record with the record of the trespass suit, which was granted. Acadian opposed the supplementation, on the ground that the record of the trespass suit had not been properly entered into evidence in this case.
Specifically, at trial of the exception of lis pendens, counsel for Bourgeois introduced the entire record of the trespass suit, with no objection by counsel for LSGC. The trial judge responded, "Well, it's gotten kind of thick," but she never formally accepted the record into evidence. Nevertheless, the judge referred to matters from the trespass suit later in the proceedings in this case.
We conclude, despite the informality of the trial judge's manner of accepting the trespass suit as evidence, that it was in fact part of the evidence the trial court considered, at least insofar as concerned the exception of lis pendens.
Further, at the beginning of the trial of the expropriation proceeding, counsel for Acadian introduced into evidence "the entire record of the lawsuit." Therefore, because the record of the trespass suit had been introduced at the hearing of the exceptions, that record was introduced at trial of the expropriation suit.

Elements of Lis Pendens
The test for deciding whether an exception of lis pendens should be granted is to inquire whether a final judgment in the first suit would be res judicata in the subsequently filed suit. Warner v. Carimi Law Firm, 98-613, p. 18 (La.App. 5 Cir. 12/16/98), 725 So.2d 592, 600-601, writ denied, 99-466 (La.4/1/99), 742 So.2d 560.
*639 Because the trespass suit was filed in 1989, it is governed by the law in effect prior to January 1, 1991. Acts 1990, No. 521, § 1, substantially changed our law of res judicata, by amending several statutes and code articles relating to finality of judgments.
Under the prior law, La.C.C.P. art. 531 provided that lis pendens applied when two or more suits were pending in a Louisiana court between the same parties in the same capacities and having the same object. Those factors are the same as the factors required to establish res judicata. At that time La.R.S. 13:4231 provided,
The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality.
Prior Louisiana legislative authority for res judicata established a presumption of correctness and precluded relitigation of the object of the judgment only when there was (1) an identity of the parties, (2) an identity of cause, and (3) an identity of the thing demanded. Bankston v. Alexandria Neurosurgical Clinic, 583 So.2d 1148, 1151 (La.App. 3 Cir.1991), writ denied 589 So.2d 1066 (La.1991).
We find no merit to the assertion of lis pendens. First, the two suits are not "between the same parties in the same capacities."[2] The parties did not appear in the same capacity in the trespass suit as in this expropriation suit. In the trespass suit, Bourgeois seeks damages for the trespass of the pipeline on his land from 1988 to the present. LSGC raised La.R.S. 9:14 as an affirmative defense, in an attempt to protect LSGC from having to pay damages for trespass. LSGC did not bring a reconventional demand for expropriation of a servitude over the land its pipeline occupies.
Thus, the judgment in the trespass suit cannot be res judicata to this case because it did not rule on LSGC/Acadian's right to expropriate the servitude over Bourgeois' land. See Ortego v. State, Dept. of Transp. and Development, 96-1322 (La.2/25/97), 689 So.2d 1358, 1362.
"Because lis pendens does not address the merits of the disputes between the parties, a reviewing court considers lis pendens in the procedural and factual climate that exists at the time of review, rather than at the time of the trial court judgment." Brooks Well Servicing, Inc. v. Cudd Pressure Control, Inc., 34,796 (La.App. 2 Cir. 8/22/01), 796 So.2d 66, 68, writ denied, 01-2810 (La.1/4/02), 805 So.2d 204.
Even where an exception of lis pendens was properly granted at the time of the hearing, when the other case is no longer pending by the time the appellate court reviews the ruling on lis pendens, if the judgment in the earlier case is not res judicata to the later case, the basis for lis pendens has been removed. See Wells v. *640 Standard Mortg. Corp., 02-1934, pp. 6-7 (La.App. 4 Cir. 7/9/03), 865 So.2d 112, 116.
Here, the judgment on liability in the trespass suit is final. Accordingly, the trial court correctly denied the exception of lis pendens.

BAD FAITH
In these assignments, Bourgeois challenges the trial court's determination that Acadian had the right to expropriate. He asserts:
3. The trial court committed legal error in holding Acadian's route selection to an "arbitrary and capricious" standard instead of the "bad faith or arbitrary and capricious" standard as required by Calcasieu-Cameron Hospital Service District v. Fontenot, 628 So.2d 75 (La.App. 3 Cir. Nov.1993). [Emphasis by appellant.]
4. The trial court committed legal and manifest error in not consistently applying its "bad faith" ruling in the trespass action to the consideration of the original pipeline route selection in this case, when the only evidence for the selected route was testimony that the route selection was based on the location of the pre-existing pipeline, and did not included any consideration of the original routes and motives of Acadian's predecessor LSGC as contained in the only credible testimony as to the 1988 route selection, that being the testimony and deposition of John Raber.
5. The trial court committed manifest error in not discerning or taking into consideration the importance of the change in the source of supply of the gas to Nalco from United Gas Pipeline to Monteray [sic] Gas Pipeline Company which fact proves the "bad faith" of the original route selection.
Bourgeois does not challenge Acadian's claims of public purpose, or its status as an expropriating authority, but he does question the route selection and the amount of just compensation.
Specifically, Bourgeois asserts that LSGC was in bad faith in routing the pipeline across plaintiff's land, because there were two alternative routes that LSGC could have chosen that would not have impinged on plaintiff's land. Both the alternative routes originated at a United Gas Pipeline Company connection north of the present tie-in with the Monterey/Cypress Pipeline.
Due to citizen protest from homeowners in a subdivision, however, parish authorities refused to approve LSGC's request. LSGC then determined it could supply the necessary gas to Nalco Chemical by a tie-in to the Monterey (now Cypress) pipeline and route the new pipeline along River Road to Nalco. The parish approved that route and the pipeline was built rapidly.
We deduce that the trial court's finding of bad faith in the trespass case resulted not from LSGC's choice of route, but rather in LSGC's failure to obtain the landowner's approval to cross his land. John Raber, the LSGC engineer in charge of the pipeline route selection, stated that he believed that by running the pipeline parallel to the existing corridor of public utilities along the Hwy. 44 right of way, the company could avoid condemnation proceedings. The company obtained permission from the Department of Transportation and Development (DOTD), as well as other government agencies. Raber could not recall seeking legal advice or doing any research on landowner rights acquisition. A letter to Raber from DOTD, in fact, makes it clear that Raber wanted to install the pipeline within the highway right-of-way *641 because of problems obtaining servitude approval from landowners.
We conclude the trial court found LSGC's flagrant disregard of the landowner's rights was bad faith, so that the St. Julien provisions of La.R.S. 19:14 did not apply.
The expediency or necessity of an expropriation is a matter for judicial determination....In this context, the word "necessary" refers to the necessity of the purpose for the expropriation, not the necessity for a specific location....The amount of land and the nature of the acreage taken must be reasonably necessary for the accomplishment of the proposed project....The trial court's factual determinations as to the necessity or expediency of the expropriation will not be reversed on appeal in the absence of manifest or clear error....
However, the extent and location of the property to be expropriated are within the sound discretion of the body possessing the power of eminent domain, and these determinations will not be interfered with by the courts if made in good faith....Questions such as the location of the expropriation, the extent of the property taken, the nature of the title to be taken, and the wisdom of pursuing the particular improvement project relate to the necessity of the taking. The standard is whether the expropriator, in selecting the location and extent of the property to be expropriated, acted in bad faith or so capriciously or arbitrarily that its action was without an adequate determining principle or was unreasoned. Criteria to be considered by the expropriator include the availability of an alternate route, costs, environmental factors, long-range area planning, and safety considerations. The expropriating agency may abuse its discretion by acting without considering and weighing the relevant factors, that is, by acting arbitrarily....However, the mere availability of a feasible alternative location is not, by itself, an indication that the expropriator has acted arbitrarily or capriciously in making its selection.
Thus, the expropriating authority must show the public and necessary purpose for the expropriation and that, prior to filing the petition for expropriation, it offered to compensate the owner with an amount equal to at least the lowest appraisal or evaluation....
The burden is on the defendant owner to establish that the decision of the public body to expropriate the property is unreasonable and in bad faith.... [Citations omitted; emphasis added.]
Calcasieu-Cameron Hosp. Service Dist. v. Fontenot, 628 So.2d 75, 78-79 (La.App. 3 Cir.1993), writ denied, 94-168 (La.3/18/94), 634 So.2d 854.
Bourgeois asserts it is inconsistent for the trial court to have found LSGC in bad faith in the trespass case, but to have found Acadian in good faith in the expropriation case. In examining both cases, we conclude the trial court was looking not at the location of the servitude, but rather at the means by which the pipeline companies dealt with the landowner.
All Bourgeois' bad faith arguments are directed to the actions of LSGC. Those actions, appropriately, resulted in a finding of bad faith against LSGC in the trespass case.
In contrast, Acadian took over the pipeline years after it was in place. Bourgeois failed to show that Acadian was in any way responsible for the decision on the route of the pipeline; rather, Acadian simply succeeded to ownership of and liability for the pipeline when it acquired LSGC. Acadian *642 proved it had tried to acquire the servitude from Bourgeois, via written negotiations with his counsel, prior to filing the expropriation suit. However, the parties could not reach agreement. When the trespass action resulted in an adverse ruling, Acadian brought suit for expropriation, in order to have its right to a servitude for the pipeline established, under its statutory rights.
As the trial court noted in the judgment incorporating reasons for judgment, the route chosen was the most direct route from the Monterey/Cypress pipeline and the court cannot control the supplier with which the pipeline company contracts.
We find, therefore, that the trial court was not manifestly erroneous in its findings on expropriation of the servitude.

ATTORNEY'S FEES
LA.R.S. 19:8(A) provides, in pertinent part:
Immediately after compensation has been determined, the plaintiff shall, upon motion of the defendant, present evidence as to the highest amount it offered the defendant for the property prior to trial on the merits. After hearing evidence on the issue, the court shall determine the highest amount offered. If the highest amount offered is less than the compensation awarded, the court may award reasonable attorney fees.
Acadian challenges the attorney's fee award of $7,500.00 as unreasonable, on the ground that the amount of attorney's fee is almost four times the amount of compensation awarded for the expropriated servitude, and "more than 133 times the difference between the compensation awarded and the highest amount offered in good faith by Acadian prior to trial." Although Acadian acknowledges that the amount of compensation awarded by the district court ($1,880.00) exceeded the highest offer by Acadian prior to trial ($1,824.00), Acadian points out that the difference is only $56.00. Acadian asserts that, under the circumstances of this case, no attorney's fee should have been awarded or, if fees are to be awarded, the fee should not exceed $500.00, or approximately 25% of the compensation awarded.
First, we note that La.R.S. 19:8 contains no cap on the amount of attorney's fees, except that they be "reasonable."[3] An award of attorney fees in expropriation cases is largely within the trial court's discretion, and a reviewing court will not disturb such an award absent an abuse of that discretion. State, DOTD v. Williamson, 597 So.2d 439, 442 (La.4/20/92). In Williamson, 597 So.2d at 442, the Louisiana Supreme Court held:
Factors to be taken into consideration in determining the reasonableness of attorney fees include: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) amount of money involved; (5) extent and character of the work performed; (6) legal knowledge, attainment, and skill of the attorneys; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and (10) the court's own knowledge.
Bourgeois contends the attorney's fee is reasonable, considering that a total of 13 memoranda and briefs were filed prior to judgment; there were three court appearances, consisting of one day to argue exceptions and two days of trial; counsel for *643 Bourgeois had to produce two expert witnesses, as well as "contend with" five witnesses produced by Acadian. Further, the expropriation action required dealing with prior and past considerations of the expropriating authorities, route selection, and "bad faith," presented many unique and time-consuming legal issues.
We agree with Bourgeois and we find no abuse of discretion in the attorney's fee award.
Finally, we note that the judgment in this matter fails to describe fully either the property or the servitude granted. La.C.C. art.1919 provides, "All final judgments which affect title to immovable property shall describe the immovable property affected with particularity." Accordingly, we remand for revision of the judgment to comply with Article 1919.
For the foregoing reasons, the judgment is affirmed. The matter is remanded for revision of the judgment to comply with La.C.C. art.1919. The parties are assessed their own costs for this appeal.
AFFIRMED AND REMANDED.
NOTES
[1] When the record in this matter was lodged, the damages portion of the trespass action was still pending in the district court. According to Acadian's brief, the damages trial is set in 2005.
[2] The trespass suit was brought against Louisiana State Gas Corporation and the judgment in that case was rendered against Louisiana State Gas Corporation. Although Acadian Gas Pipeline System is the successor in interest to LSGC, Acadian was never substituted for LSGC and none of the pleadings in the trespass case refer to Acadian. However, "[w]hen a party to an action transfers an interest in the subject matter thereof, the action shall be continued by or against such party, unless the court directs that the transferee be substituted for or joined with the transferor." La.C.C.P. art. 807. Thus, it was not improper for the suit to continue against the original defendant, LSGC.
[3] In contrast, La.R.S. 38:387(E), governing expropriations by levee districts, states, "Attorney's fees in no event shall exceed twenty-five percent of the difference between the award and the amount deposited into the registry of the court."