Dear Mr. Trippi:
You have requested an opinion of this Office on the validity of a right-of-way agreement executed by the Village of Tickfaw for the purpose of repairing and maintaining a sewerage line on a designated private road in the Village. Based on the information provided below, it is the opinion of this Office that unless and until the co-owning spouse of Lot D signs the right-of-way servitude, or ratifies her husband's signature thereon, the agreement is null and void and unenforceable.
Background
On March 3, 2009, this Office issued La. Atty. Gen. Op. 08-0217, which opined that the Village is responsible for the repair and continued maintenance of the Village's sewerage line, and for the payment of the costs thereof. Furthermore, that opinion also provided that although the original right-of-way agreement between the original landowner(s) and the Village was not properly recorded in the conveyance records of the parish, the lack of recordation did not negate the existence of the right-of-way as between the Village and the grantor.[1]
Currently, it is our understanding that while awaiting the issuance of your original opinion request, the residents along the private road that was the subject of that opinion agreed to provide a right-of-way servitude to the Village in order to properly document the utility easement. You have stated in your most recent request that during the execution process, the right-of-way agreement was signed by all but one co-owner of the properties affected by the disrepair of the sewerage line. According to your request, the owners of Lot D are a married couple and only one spouse has agreed to sign the right-of-way agreement. Your request further indicated that there is nothing in the public *Page 2 
records to indicate that the property in question is not community property.[2] Indeed, the title to the property lists the spouses as co-owners of the property. In light of this, and considering La. Atty. Gen. Op. 08-0217, you have requested an opinion from this Office on whether the right-of-way agreement negotiated by the Village and the affected community property owners and signed by all but one co-owner is valid. Additionally, you have asked whether the Village can replace the current water and sewer lines without repercussion from the property owner who refuses to sign the right-of-way servitude agreement.
Discussion
This Office cannot make factual findings as to whether the Village has obtained a legally enforceable right-of-way agreement. However, we can provide you with information regarding Louisiana's laws on the legal regime of community property and the alienation thereof and rights-of-way, in general.
According to Louisiana Civil Code Articles 2347 and 2353, the assent of both spouses is required on certain agreements. These articles provide, in pertinent part:
 Article 2347
[t]he concurrence of both spouses is required for the alienation, encumbrance, or lease of community immovables . . .
 Article 2353
[w]hen the concurrence of the spouses is required by law, the alienation, encumbrance, or lease of community property by a spouse is relatively null unless the other spouse has renounced the right to concur.
Furthermore, because La.C.C. Art. 2347 refers simply to immovables, as opposed to corporeal immovables, [3] it follows that incorporeals are included. Incorporeal immovables are rights and actions that apply to immovable things and include personal servitudes and predial servitudes.[4] Thus, these articles provide that contracts signed by only one spouse are relatively null and that the agreements become absolutely void and of no effect unless confirmed by the other spouse.[5] *Page 3 
In South Central Bell Tel. Co., [6] a lower court awarded trespass damages to a wife when the telephone company installed underground conduit on community property after having secured only the husband's consent to a servitude agreement. In that case, the court also found that although the wife had knowledge of the agreement, because she continued to object to the location of the manhole on her property, she did not ratify the servitude contract executed by her husband.[7] Based on the foregoing analysis, it is the opinion of this Office that unless and until the co-owning spouse of Lot D signs the right-of-way servitude agreement, or ratifies her husband's signature thereon, the agreement is null and void and unenforceable.
Notwithstanding that the right-of-way servitude agreement is invalid without the signature of both co-owners of Lot D, based on the information provided in your opinion request, a valid right-of-way may already exist on the property in question. In the July 23, 2008, opinion request, Mayor Lamonte stated that the sewer line was installed in 1999 by the former administration and the property owner(s) at that time. In the most recent July 2, 2009, opinion request, you have stated that although the utility easement that the Village is currently negotiating was never formally granted to the Village and recorded, the easement was shown on the surveys of the lots purchased by the property owners.[8] A 40' right-of-way servitude for road and utilities is designated on the 1996 plat of survey for Lots A through H of Lot 7.
Based on the foregoing statements, and a review of the plat depicting a right-of-way on the property in question, this Office offers the following analysis on the establishment of servitudes, generally, for your review. Please be aware that this Office was not provided with a copy of any acts of sale for Lots A through H, and therefore cannot draw any conclusions on the existence of a valid right-of-way. Furthermore, even if this Office had sufficient information from which to draw a conclusion, determining whether a valid right-of-way exists is a factual matter that is best resolved by the filing of a declaratory judgment action in a court of competent jurisdiction in order to accomplish such a determination.
Conventional predial servitudes affecting immovable property which are created by agreement between the parties must be in writing.[9] They may be established by all acts by which immovables may be transferred.[10] In Tate V. South Central BellTelephone Co., [11] the Third Circuit concluded that a reservation in an act of sale indicating that the *Page 4 
lot purchased was subject to a ten foot utility easement created a servitude by title.[12] In Tate, the record showed that the plaintiffs had purchased a tract of land from Gulf Land Investment Company, Inc. The property description in the act of sale recited that the property was sold "as per plat of survey by Paul H. Fontenot" and that the plat was attached to a previous act of sale that was recorded in the mortgage and conveyance records.[13] As a result, the Third Circuit upheld the trial court's ruling that a servitude had been granted in the area of plaintiff's property as indicated on the plat. Specifically, the court concluded, "By selling the lot to plaintiffs `as per' the surveyor's plat, a servitude was created, which the vendor, the developer of the subdivision in which the lot is located, could enforce."[14]
In Triangle Development, Inc. v. Burns, [15] the First Circuit similarly held that an act of sale, which attached a plat depicting a servitude, and the description in the title referred to the survey attached to the previous sale, created a valid servitude by title. The First Circuit stated:
In deciding a similar issue, the court in Tate v. South Central Bell Telephone Co., 386 So.2d 139, 140 (La.App. 3rd Cir. 1980) concluded that the `dashed lines' on a survey attached to one sale in the chain of title indicated the existence of a servitude, even though the sale to the present owner did not expressly mention the servitude but merely referred to the survey as attached to a prior deed.[16]
As mentioned previously, this Office is without sufficient information to conclusively opine on whether a valid servitude may already exist. However, based on the analysis provided above, this Office is of the opinion that if the acts of sale of the applicable properties indicated that the sales were in accordance with an attached survey, and such survey depicted the existence of a right-of-way, the Village may be able to make the necessary repairs to the sewerage line using this servitude of passage.[17] Please note, however, that this conclusion is merely included for informational purposes, and it is not intended for blanket applications in the absence of supporting facts.
It is the opinion of this Office that the Village's best option for creating a legally valid right-of-way is to obtain the consent of both spouses of Lot D on the right-of-way servitude agreement currently being negotiated and, upon signature of same, file this agreement in the conveyance records of Tangipahoa Parish. If the Village is unable to *Page 5 
obtain the consent of both spouses, this Office urges you to explore other available options of determining whether a valid right-of-way exists so that you may undertake these important repairs to the sewerage line in order to protect public health, safety, and welfare. One of the options available is to file a declaratory judgment action in a court of competent jurisdiction in order to determine whether a valid right-of-way may already exist based on the acts of sale of the affected properties.
Conclusion
In summary, it is the opinion of this Office that unless and until the co-owning spouse of Lot D signs the right-of-way servitude, or ratifies her husband's signature thereon, the agreement is null and void and unenforceable. However, although this Office is without sufficient information to determine whether a valid right-of-way agreement may already exist, based on the information you have provided in your opinion request, it is worth noting that a closer examination of the acts of sale of the properties may indicate that a servitude of passage has already been established by title. This conclusion would constitute a factual determination; therefore, this Office encourages you to present this question to a court of competent jurisdiction.
We hope that this sufficiently answers your inquiry, however if we may be of further assistance please do not hesitate to contact our Office.
Yours truly,
JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
By: __________________________ Megan K. Terrell Assistant Attorney General
JDC/MKT/tp
[1] Opinion 08-0217 is attached hereto and incorporated into the current opinion in its entirety.
[2] La.C.C. Art. 2342 provides that "[t]hings in the possession of a spouse during the existence of a regime of community of acquets and gains are presumed to be community . . ."
[3] Louisiana law divides things into common, public, and private; corporeals and incorporeals; and movables and immovables. La.C.C. Art. 448. A "corporeal immovable" refers to a thing that has a body, and can be felt or touched, such as lands, buildings, and other constructions. See, La.C.C. Art. 462 and 464.
[4] La.C.C. Art. 470.
[5] South Central Bell Telephone Company v. Eisman,430 So.2d 256 (La.App. 5 Cir. 1983), writ denied437 So.2d 1154 (1983).
[6] Id.
[7] Id. at 258.
[8] A copy of the original survey of Lot 7 in Section 27 T5SR7E, Village of Tickfaw, Tangipahoa Parish, dated 7/22/96, and filed into the conveyance records of Tangipahoa Parish on 10/0/98, Book 0864, Page 860, was attached to the July 2, 2009, opinion request. (copy on file with the Office of the Louisiana Attorney General).
[9] La.C.C. Art. 2440.
[10] La.C.C. Art. 722. In other words, according to Yiannopoulos, La.C.C. Art. 722 provides that a conventional servitude may be created by any juridical act that is sufficient to establish a real right in immovable property. 4 La. Civ. L. Treatise, Predial Servitudes § 112 (3d ed. 2009).
[11] 386 So.2d 139 (La.App. 3 Cir. 1980).
[12] Id. at 140.
[13] Id.
[14] Id.
[15] 469 So.2d 29 (La.App. 1 Cir. 1985).
[16] Id. at 30. See also, Bernard v. Broussard,538 So.2d 1093, 1094 (La.App. 3 Cir. 1989) (servitude of passage is created where one sub-divides property by plat of survey which designates right-of-way or servitude of passage and thereafter sells one or more tracts of land by reference to said survey, regardless of whether instrument in question specifically describes or makes reference to servitude).
[17] See, La.C.C. Art. 642 ("[a] right of use includes the rights contemplated or necessary to enjoyment at the time of its creation as well as rights that may later become necessary, provided that a greater burden is not imposed on the property unless otherwise stipulated in the title."